CONNECTICUT LIGHT AND POWER COMPANY *v.*
TEXAS-OHIO POWER, INC., ET AL.
(SC 15794)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

---

**636**

Argued December 3, 1997—officially released February 17, 1998

*Anthony M. Fitzgerald*, with whom were *Philip M. Small* and, on the brief, *Brian T. Henebry* and *William J. Quinlan*, for the appellant (plaintiff).

*Paul R. McCary*, with whom, on the brief, was *Michael J. Donnelly*, for the appellee (named defendant).

*Mark F. Kohler*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant department of utility control).

*Bruce C. Johnson*, with whom, on the brief, was *Guy R. Mazza*, for the appellee (defendant office of consumer counsel).

*Opinion*

CALLAHAN, C. J. The plaintiff, the Connecticut Light and Power Company, appeals from a trial court judgment affirming a decision by the defendant department of public utility control (department),[1] upon a request by the plaintiff for certain declaratory rulings.[2] See Gen-

---

[1] There are three defendants in this action: Texas-Ohio Power, Inc.; the department; and the office of consumer counsel, the state agency that serves as consumer advocate with respect to public service agencies. See General Statutes § 16-2a. Accordingly, the parties will be referred to by name when necessary for clarity.

[2] The plaintiff requested the following four declaratory rulings from the department: (1) Texas-Ohio Power, Inc., cannot lawfully sell electricity to the plaintiff's customers in Connecticut without a franchise granted by the General Assembly; (2) Texas-Ohio Power, Inc., is a foreign stock corporation, and is thereby prohibited by General Statutes §§ 33-286 (b) and 33-395 from selling electricity to retail customers in Connecticut; (3) Texas-Ohio Power, Inc., is a foreign electric company under General Statutes § 16-246a (1) and,

eral Statutes § 4-176 (a).[3] In its appeal, the plaintiff raises the following three issues: (1) whether the trial court employed the proper standard of review for a conclusion of law by an administrative agency; (2) whether the trial court properly concluded that Texas-Ohio Power, Inc. (Texas-Ohio), a Texas corporation, is not an "electric light company" under General Statutes (Rev. to 1995) § 33-286 (b) and, consequently, is not prohibited, pursuant to General Statutes (Rev. to 1995) § 33-395, from selling electricity to retail customers in Connecticut, despite the lack of legislative authorization; and (3) whether the trial court properly concluded that a Texas corporation authorized under the general incorporation laws of Texas to engage in any lawful business is not a "foreign electric company" under General Statutes § 16-246a (1) and, therefore, is not prohibited by General Statutes § 16-246c from selling electricity to retail customers in Connecticut. We conclude that the standard of review applied by the trial court was too deferential. We affirm the judgment of the trial court on the second issue on alternative grounds and reverse the decision of the trial court with respect to the third issue.

The facts and procedural history are undisputed. Texas-Ohio is a Texas corporation[4] operating an energy

therefore, cannot sell electricity to retail customers in Connecticut; and (4) Texas-Ohio Power, Inc., is a private power producer under General Statutes § 16-243b (a) (3) and, therefore, is not authorized to sell electricity to retail customers in Connecticut. The department ruled adversely to the plaintiff on all four issues. Only the second and third issues, however, were raised on appeal to this court.

[3] General Statutes § 4-176 (a) provides: "Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

[4] Texas law permits a Texas corporation to engage in any lawful business. Tex. Bus. Corp. Act Ann. art. 3.02 (West 1998 Pocket Part). There is no prohibition under Texas law that would preclude a Texas corporation from generating or transmitting electricity. Texas-Ohio is authorized under its

cogeneration plant in Manchester. The cogeneration plant is located on land leased from the Central Connecticut Co-operative Farmers' Association (Co-op). Texas-Ohio negotiated contracts to sell the electricity it generates at its plant to the Co-op, which is located on the same parcel of land as its plant, and to an adjacent landowner, the Rogers Corporation (Rogers), both of which are former customers of the plaintiff. The contracts require Texas-Ohio to maintain poles and wires to transmit its electricity on private property only. No aspect of Texas-Ohio's generation and transmission of electricity pursuant to its contracts with Rogers and the Co-op require it to utilize the public highways and streets.

The plaintiff, a Connecticut corporation, is a "public service company" and an "electric company" as defined by General Statutes § 16-1 (a) (4) and (8) respectively. As such, it is subject to regulation by the department, the state agency charged by § 16-1 et seq. with the regulation of public service companies, including electric companies. In return, it is legislatively protected from unauthorized competition. See *Groton* v. *Yankee Gas Services Co.*, 224 Conn. 675, 685–86, 620 A.2d 771 (1993). The plaintiff is vested, by special acts of the General Assembly, with an exclusive franchise to sell electricity in Manchester.[5]

On August 3, 1995, the plaintiff sought a declaratory ruling from the department that Texas-Ohio's retail sale of electricity to the Co-op and Rogers violates Connecticut statutes.[6] Specifically, the plaintiff claimed that

articles of incorporation "to transact any and all lawful business for which corporations may be incorporated under the Texas Business Corporation Act."

[5] The two special acts incorporating the Manchester Light and Power Company; 11 Spec. Acts 44 (1893); and incorporating the South Manchester Light, Power, and Tramway Company; 11 Spec. Acts 752 (1893); granted the exclusive franchise to predecessors in interest of the plaintiff.

[6] The plaintiff obtained an ex parte temporary restraining order against Texas-Ohio on August 15, 1995. The order was subsequently dissolved on

Texas-Ohio is a foreign stock corporation and, as such, is prohibited under §§ 33-395 and 33-286 (b) from selling electricity to retail customers in Connecticut without express legislative authorization.[7] Additionally, the plaintiff asserted that Texas-Ohio is a "foreign electric company" under § 16-246a (1) and, therefore, is prohibited from selling electricity to retail customers in Connecticut pursuant to § 16-246c.[8] The department ruled that Texas-Ohio is not an "electric company" as defined

September 18, 1995, and the plaintiff's request for a preliminary injunction was denied on October 17, 1995, pending a decision by the department.

[7] General Statutes (Rev. to 1995) § 33-395 provides: "No foreign corporation referred to in subsection (b) of section 33-286, and no foreign telephone company, shall transact in this state the business authorized by its certificate of incorporation or by the laws of the state under which it was organized, unless empowered so to do by some general or special act of this state, except for the purpose of carrying on and renewing contracts existing upon August 1, 1903." Section 33-395 was repealed by Public Acts 1994, No. 94-186, § 214. The substance of § 33-395 is now found in General Statutes § 33-920.

General Statutes (Rev. to 1995) § 33-286 (b) provides: "No corporation formed under this chapter shall have power to transact in this state the business of a telegraph company, gas, electric light or water company, or cemetery corporation, or of any company, except a telephone company, requiring the right to take and condemn lands or to occupy the public highways of this state." Section 33-286 (b) was repealed by Public Acts 1994, No. 94-186, § 214. The substance of § 33-286 (b) is now found in General Statutes § 33-645 (b).

Sections 33-286 (b) and 33-295 were renumbered effective January 1, 1997. The substance of § 33-286 (b) was not changed except to reflect the new numbering scheme. Some language in § 33-395, although not the substance, did change. That statute now provides in relevant part: "No foreign corporation *engaged in the business of a telegraph company, gas, electric light or water company, or cemetery corporation, or of any company requiring the right to take and condemn lands or to occupy the public highways of this state,* and no foreign telephone company, shall transact . . . ." (Emphasis added.) General Statutes § 33-920. This change simply incorporates the exact language of § 33-286 (b) (now § 33-645 [b]) into the text of § 33-395, eliminating the need to refer to that separate section. We will employ the numbering scheme that was applicable when this action arose, which has been used throughout the prior proceedings.

[8] General Statutes § 16-246a provides in relevant part: "When used in sections 16-246a to 16-246d, inclusive, the following terms shall have the meanings herein specified, unless the context otherwise indicates:

in § 16-1 (a) (8)[9] and, therefore, is not an "electric light company" under § 33-286 (b), concluding that both terms have the same meaning. It further concluded that Texas-Ohio is not a "foreign electric company" pursuant to § 16-246a (1), again because it is not an "electric company" as defined in § 16-1 (a) (8). Accordingly, the department denied the plaintiff's request for declaratory rulings.

The plaintiff appealed from the decision of the department to the Superior Court. See General Statutes §§ 16-35 and 4-183. In its memorandum of decision, the trial court concluded that the plaintiff had failed to meet its burden of proving that "the agency, in light of the

"(1) 'Foreign electric company' means a corporation, company, association, joint stock association or trust organized under the laws of a state other than this state, as well as, a town, city, borough, or any municipal corporation, department or agency thereof, whether separately incorporated or not, of a state other than this state, *authorized under the laws of the state in which organized* to generate or transmit electric energy . . . ." (Emphasis added.)

General Statutes § 16-246c (a) provides: "Notwithstanding any limitations otherwise imposed by the general statutes on the transacting of an electric utility business in this state, any foreign electric company is authorized and empowered to generate and transmit electric energy, and to acquire utility facilities necessary or convenient for the purposes of its electric utility business or undivided interests therein and to operate the same, anywhere within this state; *provided, unless otherwise authorized by the general statutes or any special act of this state, no such company shall have the power (1) to sell electric energy in this state to persons other than electric companies,* (2) to erect, lay or maintain utility facilities in, over or under the public highways, streets and grounds in this state or (3) to take property in this state by condemnation or the exercise of a right of eminent domain." (Emphasis added.)

[9] General Statutes § 16-1 (a) (8) provides in relevant part: " 'Electric company' includes every corporation, company, association, joint stock association, partnership or person, or lessee thereof, owning, leasing, maintaining, operating, managing or controlling poles, wires, conduits or other fixtures, along public highways or streets, for the transmission or distribution of electric current for sale for light, heat or power within this state, or engaged in generating electricity to be so transmitted or distributed for such purpose, but shall not include a private power producer, as defined in section 16-243b . . . ."

evidence, has acted arbitrarily, illegally or in abuse of its discretion." It concluded that the department's interpretation of the statutes at issue was "entirely reasonable" and affirmed the department's decision without engaging in any independent statutory analysis. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

The first issue presented is whether the trial court employed the proper standard in reviewing the decision of the department. The standard of review of an agency decision is well established. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . *Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .* Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *State Employees' Review Board,* 239 Conn. 638, 645, 687 A.2d 134 (1997); see also *Starr* v. *Commissioner of Environmental Protection,* 236 Conn. 722, 735–36, 675 A.2d 430 (1996); *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities,* 236 Conn. 681, 688, 674 A.2d 1300 (1996); *SLI International Corp.* v. *Crystal,* 236 Conn. 156, 170–71, 671 A.2d 813 (1996); *Dept. of Administrative Services* v. *Employees' Review Board,* 226

Conn. 670, 678–79, 628 A.2d 957 (1993); *Lieberman* v.
*State Board of Labor Relations,* 216 Conn. 253, 263,
579 A.2d 505 (1990); *State Medical Society* v. *Board of
Examiners in Podiatry,* 208 Conn. 709, 718–19, 546
A.2d 830 (1988). " '[I]t is for the *courts, and not admin-
istrative agencies,* to expound and apply governing
principles of law.' " (Emphasis added.) *Connecticut
Hospital Assn., Inc.* v. *Commission on Hospitals &
Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986);
accord *Levinson* v. *Board of Chiropractic Examiners,*
211 Conn. 508, 521, 560 A.2d 403 (1989); *Southington*
v. *State Board of Labor Relations,* 210 Conn. 549, 558,
556 A.2d 166 (1989); *United Parcel Service, Inc.* v.
*Administrator, Unemployment Compensation Act,*
209 Conn. 381, 385–86, 551 A.2d 724 (1988); *State Medi-
cal Society* v. *Board of Examiners in Podiatry,*
supra, 717.

There were no disputed facts before the department.
The resolution of the questions presented by the plain-
tiff for declaratory rulings rested entirely on the depart-
ment's interpretation of the applicable statutes and the
legal meaning to be attributed to specific phrases in
those statutes. The questions before the department
were, therefore, purely questions of law. Moreover,
these questions of law previously had not been sub-
jected to judicial scrutiny.[10] The trial court's memoran-
dum of decision indicates that the standard of review
applied by the trial court was too deferential. In articu-
lating the standard it employed, the trial court stated

--------

[10] Prior to the time of the department's decision, the trial court ruled in
this matter that the plaintiff was not entitled to a permanent injunction
against Texas-Ohio because there was not sufficient evidence that one was
warranted. The trial court opined that a better interpretation of the statute
is that an electric light company is the same as an electric company. The
plaintiff argues that the decision rested on the conclusion that an injunction
was not proper until the department issued its ruling, and the statutory
interpretation language is mere dicta. We need not decide whether the
injunction proceeding constituted a prior judicial interpretation affording
this aspect of the department's decision a right to special deference because

that its "ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion," (internal quotation marks omitted), quoting *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 58, 591 A.2d 1231 (1991). After summarizing the department's analysis, the court concluded only that the department's interpretation of the applicable statutes was "entirely reasonable." As noted previously, it is well established that this deferential standard is not applicable to the court's review of an agency's construction of a statute, which is a pure question of law, particularly when the question has not been subjected to prior judicial review. We conclude that under the circumstances, the trial court applied a standard of review that was too deferential when it affirmed the department's unfavorable response to the plaintiff's request for declaratory rulings. See *SLI International Corp.* v. *Crystal,* supra, 236 Conn. 170. Because appellate review of conclusions of law is plenary, we will review the substantive merits of the trial court's conclusions.

II

The second issue raised by the plaintiff is whether the trial court properly concluded that a foreign stock corporation selling electricity at retail without utilizing the public highways is not an "electric light company" within the meaning of § 33-286 (b) and, therefore, is

we conclude that the department's decision, if not its reasoning, was correct with respect to this issue. See part II of this opinion. The trial court's affirmance was, therefore, also correct, regardless of the standard of review.

As to the interpretation of the meaning of a "foreign electric company," the trial court ruled in the injunction proceeding that because Texas-Ohio's certificate of incorporation was not admitted into evidence, it was unable to conclude whether Texas-Ohio met the definition. This statute, therefore, was never subjected to judicial interpretation, and no special deference to the department's decision was warranted.

permitted to sell electricity to retail customers in Connecticut pursuant to § 33-395 without legislative authorization. The resolution of this issue rests upon an interpretation of the relevant statutes, which are §§ 33-395 and 33-286 (b). "When we engage in statutory interpretation, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80, cert. denied, 515 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995).

Section 33-395 provides in relevant part that "[n]o foreign corporation referred to in subsection (b) of section 33-286 . . . shall transact in this state the business authorized by its certificate of incorporation or by the laws of the state under which it was organized, unless empowered so to do by some general or special act of this state . . . ." Section 33-286 (b) provides that "[n]o corporation formed under this chapter [i.e., a domestic corporation] shall have power *to transact in this state the business of a* telegraph company, gas, *electric light* or water *company*, or cemetery corporation, *or of any company*, except a telephone company, *requiring the right to take and condemn lands or to occupy the public highways of this state.*" (Emphasis added.) When these two statutes are interpreted together, we recognize that a foreign stock corporation, like a domestic corporation, may be precluded from transacting in Connecticut "the business of [an] . . . electric light . . . company"; General Statutes § 33-286

(b); without express legislative authorization. The plaintiff argues, therefore, that § 33-395 prohibits Texas-Ohio, admittedly a foreign stock corporation, from selling electricity at retail in Connecticut without express authorization of the legislature because such sales constitute the business of an "electric light company."

The defendants counter that Texas-Ohio is not an "electric light company" and that the statutory prohibition in § 33-395 is inapplicable. "Electric light company" is not explicitly defined in §§ 33-395 or 33-286. It is necessary, therefore, to establish its meaning relative to the statutes in issue. To that end, the department looked to the definition of an "electric company" in § 16-1 (a) (8). There, an "electric company" is defined, in pertinent part, as "every corporation . . . owning, leasing, maintaining, operating, managing or controlling poles, wires, conduits or other fixtures, *along public highways or streets, for the transmission or distribution of electric current for sale* for light, heat or power within this state, *or engaged in generating electricity to be so transmitted or distributed for such purpose* . . . ."[11] (Emphasis added.) The department determined that because the legislature is presumed to harmonize statutes; *Tolly* v. *Dept. of Human Resources*, 225 Conn. 13, 28, 621 A.2d 719 (1993); the terms "electric light company" and "electric company" have the same meaning in both statutes. It concluded that because Texas-Ohio does not generate electricity to be transmitted or distributed on poles, wires, conduits or other fixtures, along public highways or streets, it is neither an "electric company" nor an "electric light company" and, therefore, is not precluded by § 33-395 from selling its electricity at retail without legislative authorization in the limited circumstances of this case.

---

[11] All the parties agree that Texas-Ohio would not qualify as an "electric company" as defined by § 16-1 (a) (8) because it does not occupy the public highways or streets.

Although Texas-Ohio urges us to agree with the department and conclude that the terms "electric light company" and "electric company" have the same meaning, we are not inclined to go that far. The two terms are different and they appear in unrelated statutory schemes. Related terms appearing in different titles unrelated to the same subject do not give proper guidance in statutory interpretation. *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 422, 426 A.2d 1324 (1980). Moreover, an interpretation that the two terms at issue have different meanings would not necessarily create disharmony among the statutes. There is insufficient support in the text and legislative history of the statutes in question to justify a conclusion that the legislature intended that these terms be accorded the same meaning. Nonetheless, we agree with the department's conclusion that Texas-Ohio is not precluded *by § 33-395* from engaging in the sale of electricity at retail to the Co-op and to Rogers, an endeavor that does not require Texas-Ohio to utilize the public highways or streets.

We begin our statutory analysis by noting that both § 33-395 and § 33-286 are within the Business Corporation Act. They are not part of title 16 governing public service companies and vesting the department with authority to regulate those companies. Sections 33-395 and 33-286 were first enacted in 1901 in substantially the same form as they exist today. Public Acts 1901, c. 157, § 2, the predecessor to § 33-286, provided: "Any three or more persons may associate to form a corporation for the transaction of any lawful business, *except* that of a bank, a savings bank, a trust company, a building and loan association, an insurance company, a surety or indemnity company, a steam railroad or street railway company, a telegraph company, a gas, electric light, or water company, or any company which shall need to have the right to take and condemn lands or

to occupy the public highways of this state. . . ." (Emphasis added.) In addition, § 51 of that act, the predecessor to § 33-395, provided that "no foreign corporation shall engage or continue in any kind of business in this state, the transaction of which is not permitted to domestic corporations [under § 2] by the laws of this state." The language of § 51 was amended by Public Acts 1903, c. 194, § 81, to approximate the language as it currently appears in § 33-395.[12]

We have interpreted the language of § 51 to permit "corporations established under the laws of other States to exercise in this State their appropriate corporate powers in the transaction of any kind of business permitted to a domestic corporation formed under the Corporation Act of 1901; and [to forbid] corporations of other States to engage in any kind of business in this State which is not permitted to domestic corporations formed under said Act." *Farmers' Loan & Trust Co. of New York* v. *Smith*, 74 Conn. 625, 628, 51 A. 609 (1902). We later affirmed that interpretation notwithstanding the textual change to the predecessor to § 33-395 in 1903. *Equitable Trust Co.* v. *Plume*, 92 Conn. 649, 654–56, 103 A. 940 (1918). "[W]e presume that the legislature has knowledge of this longstanding construction which this court has given to the objective and purpose of legislation in this field. . . . We also presume that the legislature is aware of the effect that its action or

---

[12] Public Acts 1903, c. 194, § 81, provided in relevant part: "[N]o foreign corporation belonging to any of the classes excepted in section 62 of this act shall engage in or continue, in this state, the business authorized by its charter or the laws of the state under which it was organized, unless empowered so to do by some general or special law of this state . . . ." This change did not effectuate any relevant substantive change. Section 62 of the 1903 act, which is identical to § 2 of the 1901 act, is the predecessor to § 33-286. The only significant change in the present statute is that the list of businesses that foreign corporations may not transact has been decreased from all of those appearing in § 2 to only those noted in § 33-286 (b), i.e., public service companies. That reduction does not affect our analysis of the function of § 33-395.

inaction will have on an existing statute, and to intend the effect that its action or inaction produces." (Citations omitted; internal quotation marks omitted.) *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 321, 640 A.2d 101 (1994). Through numerous reenactments leading to the present §§ 33-395 and 33-286 (b), the legislature has made no textual change that would persuade us that it does not concur in our statutory interpretation.

With that historical perspective on the function and purpose of §§ 33-395 and 33-286 (b) in mind, we turn to the present case. Section 33-286 precludes domestic corporations from engaging in a variety of businesses without legislative authorization. Subsection (b) specifically prohibits a domestic corporation from "transact[ing] in this state the business of a[n] . . . electric light . . . company . . . or of any company . . . requiring the right to take and condemn lands or to occupy the public highways of this state." Admittedly, the phrase "requiring the right to condemn land or to occupy the public highways" grammatically does not relate back to modify, and thereby define, the term "electric light company." It does, however, inform our consideration of what the legislature intended when enacting that section.

The legislative history of § 33-286, unfortunately, is sparse and generally uninformative as to the intended meaning of the term "electric light company." We note, however, that the predecessor to § 33-286 enacted in 1901; Public Acts 1901, c. 157, § 2; contains the same catch-all phrase that prohibits any company that requires the right to use the public highway or condemn land from transacting business without further legislative authority. The only notable difference between the original act and the present § 33-286 is that the 1901 statute contained only one relevant section comprised of a comprehensive list of all of the businesses in which

domestic corporations could not engage under the general incorporation provisions. That list included businesses such as banks and insurance companies as well as public service companies. The legislature later divided this original, comprehensive list into several subsections containing related businesses.[13] At present, subsection (a) governs banks and related businesses including savings banks, building and loan associations, and trust companies. Subsection (c) of § 33-286 governs insurance companies and related businesses including surety and indemnity companies. Subsection (b) refers only to public service types of businesses including telegraph, telephone, gas, water and electric light companies, and to cemetery corporations. It includes the catch-all provision applicable to businesses that require use of the public streets or the right to condemn land. The only logical reason we can discern as to why the legislature left the catch-all phrase in the same subsection as electric light companies is that it considered electric light companies, as well as all of the other businesses named, as businesses similar to those included in the catch-all phrase and "requiring the right to take and condemn lands or to occupy the public highways of this state." General Statutes § 33-286 (b). If the two are unrelated, we are persuaded that the legislature would have separated the various public utility types of businesses and the phrase "requiring the right to take and condemn lands or to occupy the public highways of this state" into separate subsections as it did with entities related to insurance and banking.[14]

---

[13] It is appropriate that we view the entire statute, not merely subsection (b). " '[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed.' 2A J. Sutherland, Statutory Construction (5th Ed. 1992) § 46.05, p. 103 . . . ." (Citation omitted.) *State* v. *Spears*, supra, 234 Conn. 91.

[14] In its decision, the department relied heavily on an 1893 statute and a 1909 amendment regarding limitations on the sale of electricity, which was

We conclude that for purposes of § 33-286 (b), the legislature intended an "electric light company" to be a company that requires the right to occupy the public highways and streets and to condemn land to conduct its business. If Texas-Ohio were a domestic corporation incorporated under the laws of the state of Connecticut to engage in any lawful business, we believe that it would be permitted, notwithstanding § 33-286 (b), to engage in the retail sale of electricity to the Co-op and Rogers because those sales do not require it either to utilize the public highways or streets or to condemn land.[15] Consequently, Texas-Ohio is not transacting the business of an "electric light company" pursuant to § 33-286 (b).

---

repealed in 1915; Public Acts 1915, c. 228; in determining the meaning of an "electric light company." The 1893 statute authorized private generation of energy by a landowner and the sale of electricity to a tenant on the same property. The 1909 amendment to that statute more broadly granted permission to sell electricity as long as it was not done over or along the public streets. Public Acts 1909, c. 254. The statute at issue here, § 33-286, was first adopted in 1901 in a separate statute, wholly independent of the 1893 and 1909 statutes.

In its brief, the department contends that its analysis of the 1893 and 1909 statutes nonetheless was appropriate. It looked to those statutes not as controlling or determinative of the intent of the 1901 legislature, but as helpful in informing its understanding of what the legislature might have considered the definition of an "electric light company" in 1901 when it adopted the predecessor to § 33-286. Because of the dearth of legislative history on § 33-286 and its predecessors, it is reasonable to look to any piece of the legislative history that may aid the understanding of the meaning of the statute. The 1893 and 1909 statutes are roughly contemporaneous with the 1901 statute. They are more helpful in understanding how turn-of-the-century lawmakers viewed the sale of electricity than is any current provision. It was not unreasonable, therefore, to seek guidance in their language. Their key concern seemed to be directed only at regulating electricity sales that required occupying the public streets. Such an understanding comports with our interpretation of §§ 33-286 (b) and 33-395.

[15] We emphasize that the conclusion we reach today is limited by the specific facts presented. Texas-Ohio, in the transactions complained of, delivers electricity over private property only and makes no use of the public streets for its generation or transmission of electricity. If, for example, Texas-Ohio delivered electricity to a neighbor across a public street, the conclusion would be different under §§ 33-395 and 33-286 (b).

As previously noted, we have interpreted § 33-395 to permit a foreign corporation to transact any business that a domestic corporation could transact pursuant to § 33-286 (b) and as prohibiting foreign corporations from engaging in only those businesses in which a domestic corporation would not be permitted to engage pursuant to § 33-286 (b). See *Equitable Trust Co.* v. *Plume*, supra, 92 Conn. 654–56; *Farmers' Loan & Trust Co. of New York* v. *Smith*, supra, 74 Conn. 628. The purpose of § 33-395, as interpreted, would not be effectuated if Texas-Ohio, solely because it is a foreign corporation, were precluded, without further legislative authorization, from engaging in the same business in which a domestic corporation could engage without such authorization. Consequently, *there is no basis in the Business Corporation Act,* specifically §§ 33-395 and 33-286 (b), for precluding Texas-Ohio from engaging in the transactions complained of by the plaintiff. Accordingly, the trial court's affirmance of the department's ruling denying the plaintiff's request for a favorable declaratory ruling on the effect of §§ 33-395 and 33-286 (b) was correct.

III

The final issue presented by the plaintiff is whether the trial court correctly agreed with the department's conclusion that a foreign corporation authorized under the general incorporation laws of the state wherein it is incorporated to engage in any lawful business, which, a fortiori, includes transmitting and generating electricity, is nonetheless not a "foreign electric company" pursuant to § 16-246a (1) and, consequently, is not prohibited by § 16-246c from selling electricity to retail customers in Connecticut. Section 16-246c (a) provides in relevant part: "Notwithstanding any limitations otherwise imposed by the general statutes on the transacting of an electric utility business in this state, any *foreign*

*electric company* is authorized and empowered to generate and transmit electric energy, and to acquire utility facilities necessary or convenient for the purposes of its electric utility business or undivided interests therein and to operate the same, anywhere within this state; *provided, unless otherwise authorized by the general statutes or any special act of this state, no such company shall have the power (1) to sell electric energy in this state to persons other than electric companies . . . .*" (Emphasis added.) The parties agree that if Texas-Ohio is a "foreign electric company," the retail sale of electricity to the Co-op and Rogers would be a violation of § 16-246c. Texas-Ohio argues that it is not a "foreign electric company" because it is not an "electric company" pursuant to § 16-1 (a) (8) and because § 16-246a (1) is intended to apply only to foreign public utilities subject to regulation as such in their states of incorporation. Relying on this alleged intent of the legislature with respect to General Statutes §§ 16-246a through 16-246d, the department agreed with Texas-Ohio's interpretation of the meaning of "foreign electric company." We find no such limitation in the statute's unambiguous text and, therefore, do not agree with the department's interpretation or its conclusion.

The term "foreign electric company" is a statutorily defined term that appears in § 16-246a, a section containing definitions expressly applicable to § 16-246c. " '[C]ourts are bound to accept the legislative definition of terms in a statute'; *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883 (1961) . . . ." *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 225, 602 A.2d 1019 (1992). Section 16-246a (1) provides that a " '[f]oreign electric company' means a corporation . . . organized under the laws of a state other than this state . . . *authorized under the laws of the state in which organized to generate or transmit electric energy* . . . ." (Emphasis

added.) Nowhere in § 16-246a or § 16-246c is there a reference to § 16-1 for aid in defining "foreign electric company"; indeed, the opposite is true. Section 16-246a (4) requires that "*[e]xcept as otherwise provided in sections 16-246a to 16-246d,* inclusive, terms which are defined in section 16-1 shall have the respective meanings specified therein." (Emphasis added.) Because the definition of "foreign electric company" is "otherwise provided" in § 16-246a (1), § 16-246a (4) explicitly mandates that the definitions in § 16-1 do not control the interpretation of the meaning of that term as used in §§ 16-246a through 16-246d.

Furthermore, the term "electric company" appears nowhere in the text of the statutory definition of a "foreign electric company" in § 16-246a (1). By contrast, the definition of a "domestic electric company" contained in § 16-246a (2) is "an electric company organized under the laws of this state . . . ." This provision, in conjunction with § 16-246a (4), evinces a legislative intent to refer to § 16-1 (a) (8) for the definition of an "electric company" for purposes of § 16-246a (2), but not § 16-246a (1). If the legislature had intended the same definition to be applicable to a "foreign electric company," it could have employed the same language in subdivision (1) as it employed in subdivision (2) of § 16-246a. In the absence of such language, it is reasonable to conclude that the legislature intended a different, broader definition of a "foreign electric company" than simply an "electric company," as defined in § 16-1 (a) (8), incorporated in a foreign state.

The unambiguous definition in § 16-246a (1) raises two questions that, if answered in the affirmative, require a conclusion that a corporation is a "foreign electric company" for the purposes of § 16-246c. First, is the corporation organized under the laws of a state other than Connecticut? The answer to that question is obviously in the affirmative because it is undisputed

that Texas-Ohio is organized under the laws of the state of Texas. Second, if a corporation is a foreign corporation, is the corporation *authorized* under the laws of the state in which it is incorporated to generate or transmit electric energy? Again, the answer is in the affirmative. Texas law *authorizes* corporations organized under its general incorporation laws to engage in any lawful business. See Tex. Bus. Corp. Act Ann. art. 3.02 (A) (3) (West 1998 Pocket Part). There is no limitation in Texas law prohibiting a domestic corporation from engaging in the business of generating or transmitting electric energy, which is a lawful activity. It would appear, then, that Texas-Ohio is a "foreign electric company" that is prohibited from selling electricity at retail in Connecticut to the ultimate consumer.

The defendants argue that this interpretation is overly broad and in conflict with the legislative purpose of the statutory scheme of §§ 16-246a through 16-246d. They contend that it is appropriate to look to the legislative purpose because the language of the statute is ambiguous. The ambiguity, they argue, stems from their assertion that the phrase, "authorized under the laws of the state in which organized to generate or transmit electric energy"; General Statutes § 16-246a (1); is not self-explanatory. They maintain that the phrase is meant to include only those corporations that are affirmatively chartered for that purpose.[16] We find no such limitation

---

[16] The department conceded at oral argument that this interpretation of the statute would allow a foreign corporation like Texas-Ohio to engage in the business of an electric company without authorization by our legislature, by avoiding public streets, and not be subject to regulation simply because it is not expressly chartered as an electric company. This would enable such a corporation to set up a network for electricity distribution over private ways, for example in a private subdivision, and be free from all regulation by the department, including rate regulation and other consumer protection. We do not believe the legislature intended such a result.

The defendants assert that public policy in this state regarding electric companies and competition is changing in favor of such an interpretation and they anticipate that the legislature will act accordingly in its next session.

in the statutory language. "We will not torture the words or sentence structure of a statute to import an ambiguity where the ordinary meaning of the language leaves no room for it." *Board of Education* v. *State Employees Retirement Commission*, 210 Conn. 531, 543, 556 A.2d 572 (1989). Affirmative authorization is not the only means by which a corporation obtains authority to generate or transmit electric energy. A Texas corporation, for example, is vested with authority to generate and transmit electric energy by virtue of its statutory authorization to engage in any lawful business, without limitation. It cannot be said, as the defendants argue, that Texas-Ohio is not authorized to generate or transmit electric energy simply because the Texas legislature did not affirmatively charter it for that purpose. In Texas, an affirmative charter is not required. Section 16-246a (1) is necessarily broad in order to bring within its reach any foreign corporation that *could* generate or transmit electric energy.

We believe that the statute is plain and unambiguous on its face and that it is unnecessary to look beyond its text to the legislative purpose. Ordinarily, "when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *Frillici* v. *Westport*, 231 Conn. 418, 430, 650 A.2d 557 (1994); *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 508, 636 A.2d 1342 (1994). Moreover, even if we consider the legislative purpose, which was to allow foreign utility companies to engage in joint ventures with domestic utilities, it does not militate in favor of the defendants' interpretation.[17]

The defendants may be correct, but the legislature has given us no indication of this policy change. The legislature is free to modify or clarify the policy as it desires. Until it does so, however, we are limited to an interpretation of the statutes as presently written.

[17] The purpose of these statutory provisions, as articulated by the sponsor of the bill, was to allow foreign electric companies to engage in joint ventures

We conclude that Texas-Ohio is a "foreign electric company" as defined by § 16-246a (1) and, therefore, it is prohibited, unless otherwise authorized, from engaging in the retail sale of electricity by § 16-246c (a) (1). Consequently, the trial court improperly affirmed the department's denial of the plaintiff's request for a declaratory ruling that Texas-Ohio is a foreign electric company and, as such, is not authorized to sell electricity at retail in Connecticut.

The judgment is reversed in part and the case is remanded to the trial court with direction to render judgment determining that Texas-Ohio is a foreign electric company as defined in § 16-246a (1) and, consequently, is prohibited from engaging in the sale of electricity at retail to the ultimate consumer by § 16-246c (a) (1), thereby sustaining the appeal.

In this opinion the other justices concurred.

with domestic utility companies in this state in order to create generating plants to meet the growing need for electricity. 11 H.R. Proc., Pt. 2, 1965 Sess., p. 883, remarks of Representative Ralph Brown. The legislature was aware of a proposed plan for such generating plants that included participation by a foreign corporation and enacted this legislation to implement that plan. Id. Notwithstanding, the legislature apparently did not want foreign corporations to have the same status as domestic electric companies. Thus, prohibition of the retail sale of electricity and the right to occupy the public streets or condemn lands was included in the legislation. Nothing in this stated purpose is inconsistent with our interpretation. To the contrary, our interpretation prevents all foreign corporations that could sell electricity at retail, including those affirmatively chartered for that purpose, from achieving the privileged status enjoyed by legislatively authorized domestic electric companies, namely, the right to sell electricity at retail and the right to condemn land and occupy the public streets.