[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. Statement of the Case
Pursuant to General Statutes § 16-35 and § 4-183, the plaintiff, Eastern Connecticut Regional Water Co., Inc., (Eastern) appeals a decision of the defendant, the Connecticut Department of Public Utility Control (DPUC), regarding the plaintiff's application for approval of amended rate schedules. The DPUC is authorized by General Statutes § 16-19 to act upon such applications in accordance with the principles and guidelines set forth in § 16-19e. Also named as a defendant is the Office of Consumer Counsel (OCC), charged by General Statutes § 16-2a with acting as the advocate for consumer interests in all matters which may affect Connecticut consumers with respect to public service companies.
 II. Issues
Eastern raises two issues on appeal. The first issue is whether the DPUC's December 2, 1998, decision calculating Eastern's rates to reflect inclusion of the assets of an acquired CT Page 9343 water company may operate retroactively from the DPUC's August 27, 1997, decision originally excluding such assets. The second issue is whether the DPUC erred in reducing the pro forma expense for state and federal taxes to reflect the allowable deduction for net operating loss carried forwards.
 III. Procedural History
The DPUC's decision regarding the plaintiff's application for approval of amended rate schedules was rendered on August 27, 1997, and mailed on September 3, 1997, in accordance with General Statutes § 4-180. On October 16, 1997, the plaintiff commenced this appeal by serving a copy of the appeal on the defendants and by filing the appeal with the clerk of the superior court in accordance with General Statutes § 4-183 (c). Both defendants filed answers on December 22, 1997. The return of record was filed on December 22, 1997. The plaintiff's brief was filed on May 7, 1998. The OCC filed its brief on September 30, 1998, and the DPUC filed its brief on October 1, 1998.
On June 15, 1998, both defendants joined in a motion to stay the appeal pending resolution of a limited reopening, initiated by the DPUC, of the administrative docket pertaining to Eastern's application. The motion was granted, Zarella, J., on August 20, 1998. The DPUC rendered a decision on the reopened docket on December 2, 1998.
On January 7, 1999, the plaintiff filed an amended appeal. The OCC filed an answer to the amended appeal on February 8, 1999.[1] The plaintiff filed an amended brief on February 9, 1999. The DPUC filed a supplemental brief on March 8, 1999, and the OCC filed a supplemental brief on March 12, 1999. On May 17, 1999, the court heard oral argument on the appeal.
 IV. Facts
The plaintiff, Eastern Connecticut Regional Water Company, Inc., (Eastern), is a public service company as defined in General Statutes § 16-1, organized and existing under the laws of the state and having its principal place of business in Stafford Springs, Connecticut. (Amended Appeal, ¶ 1; DPUC Answer, December 22, 1997, [DPUC Answer] ¶ 1; OCC Answer, February 8, 1999, [OCC Answer] ¶ 1.) Eastern represents that it owns or operates twenty-nine satellite water systems situated throughout the eastern region of the state and provides water service to CT Page 9344 approximately 1900 customers. (Amended Appeal, ¶ 1.)
The defendant, the Department of Public Utility Control (DPUC), is a regulatory agency of the state empowered under General Statutes §§ 16-1 et seq. to regulate and supervise public service companies and to establish the level and structure of rates. (Amended Appeal, ¶ 2; DPUC Answer, ¶ 2; OCC Answer, ¶ 2.) The defendant, the Office of Consumer Counsel (OCC), is charged by General Statutes § 16-2a to act as the advocate for consumer interests in all matters regarding public service companies which may affect the consumers of the state. (Amended Appeal, ¶ 3; DPUC Answer, ¶ 3; OCC Answer, ¶ 3.)
On December 29, 1996, Eastern filed an application with the DPUC for approval of amended rate schedules. (Return of Record [ROR], Item I.) Specifically, Eastern requested an annual revenue increase of $371,643, a 53.5 percent increase over test year revenues adjusted to reflect pro forma changes. (ROR, Item I-1, p. 2.) A revised application was filed on February 27, 1997. (Amended Appeal, ¶ 5; DPUC Answer, ¶ 5; OCC Answer, ¶ S.) On May 22, 1997, Eastern submitted final figures reducing the requested increase to $345,757, or a 49.7 percent increase over test year revenues. (ROR, Item XV-2, Exhibit D.) Duly noticed public hearings were held on April 29 and 30, 1997, and May 8, 13 and 21, 1997. (ROR, Items VII, XIII.)
By written decision dated August 27, 1997, and mailed on September 3, 1997, the DPUC approved total annual revenues for Eastern in the amount of $948,696 based on a rate of return of 9.22 percent. (ROR, Item XII.) The approved amount represented an overall increase in rates of $159,107, or a 20.15 percent increase over adjusted test year revenues of $789,589. (ROR, Item XII.) Thus, the approved rate increase was substantially less than that requested by Eastern. (Amended Appeal, ¶ 8; DPUC Answer, ¶ 8; OCC Answer, ¶ 8.)
The DPUC's decision contained the following determinations pertinent to this appeal. At the time Eastern filed its application for amended rate schedules, the company was in the process of acquiring the Pinewood Lane Water Company (Pinewood), an unregulated water system servicing twenty customers. (See Plaintiff's Brief, May 7, 1998, p. 7; DPUC Supplemental Brief, March 8, 1999, Appendix A, pp. 5-7.) Eastern submitted with its application an asset report which the DPUC found, through an inspection of the physical plant and cross examination, did not CT Page 9345 list all contributed plant, listed retired assets, listed assets multiple times, and omitted some assets entirely. (ROR, Item XII, p. 7.) The DPUC determined that some adjustments to plant in service were necessary. (ROR, Item XII, p. 8.) In particular, the DPUC determined that the entry for the assets of Pinewood should be excluded from plant in service based on the stated reason that "[t]he sale of Pinewood Lane and the setting of rates had not occurred before the record in this proceeding had been closed, therefore, the Department will not include Pinewood Lane in the Company's financial statements."[2] (ROR, Item XII, p. 26.) Thus, a reduction to plant in service in the amount of $108,350 was made. (ROR, Item XII, p. 8.)
In addition, the DPUC recognized that Eastern uses net operating loss carried forwards as a means of reducing income tax expenses with the result that Eastern has paid little or no income taxes in the last several years. (ROR, Item XII, p. 18.) Eastern requested the amount of $29,572 as the pro forma income tax expense. (ROR, Item XV-2, Exhibit D.) The DPUC decided, however, that the pro forma income tax expense calculation should reflect the allowable deduction for net operating loss carried forwards based on the reasoning that "ratepayers should not be required to have expenses for income taxes included in their rates when these amounts are not being paid to the state or federal government." (ROR, Item XII, p. 19.) Using a three year amortization of net operating loss carried forwards, the DPUC allowed a total pro forma expense of $6,587, $4,369 for state taxes and $2,218 for federal taxes. (ROR, Item XII, p. 19.) Thus, Eastern's requested amount of the pro forma tax expense was reduced by $22,985. (ROR, Item XII, p. 19.)
On October 16, 1997, Eastern filed an appeal in superior court in accordance with General Statutes § 4-183 (c) contesting the DPUC's decisions to exclude the assets of Pinewood from plant in service and to reduce the pro forma tax expense. Before Eastern's appeal could be resolved, however, the DPUC, acting on its own initiative pursuant to General Statutes § 16-9,[3]
announced by decision dated June 12, 1998, the reopening of the administrative docket regarding Eastern's application. (See Attachment to DPUC's Motion for Stay of Administrative Appeal, June 15, 1998.) The DPUC's stated purposes for reopening the docket were to examine the assets of Pinewood, include those assets deemed prudent in Eastern's rate base, and to adjust Eastern's rates as necessary. (See Attachment to DPUC's Motion for Stay of Administrative Appeal, June 15, 1998.) CT Page 9346
By decision dated December 2, 1998, the DPUC approved an overall 1.1 percent increase in revenues to reflect inclusion of Pinewood in rates. (See DPUC Supplemental Brief, March 8, 1999, Appendix A, p. 2.) Eastern requested that the company be allowed to recover the increased rate from August 27, 1997, the date of the DPUC's original decision regarding Eastern's application. (See DPUC Supplemental Brief, March 8, 1999, Appendix A, p. 5.) The DPUC denied Eastern's request on the ground that to allow such recovery would constitute retroactive ratemaking. (See DPUC Supplemental Brief, March 8, 1999, Appendix A, p. 5.) Instead, the rate increase was deemed effective as of December 2, 1998. (See DPUC Supplemental Brief, March 8, 1999, Appendix A, p. 9.)
Eastern then filed an amended appeal on January 7, 1999, contesting the DPUC's decision denying retroactive application of the increased rate and reasserting the issue from the original appeal regarding the reduction to the pro forma tax expense. The court heard oral argument on May 17, 1999.
 V. Discussion A. Jurisdictional Requirements 1. Aggrievement
"The statutory authority for appeals from DPUC decisions rests in the provisions of General Statutes §§ 16-35 and 4-183."Basilicato v. Department of Public Utility Control, 197 Conn. 320,322-23, 497 A.2d 48 (1985). General Statutes § 16-35 (a) provides in relevant part: "Any person, including but not limited to a company, town, city, borough or corporation aggrieved by any order, authorization or decision of the [DPUC] . . . may appeal therefrom in accordance with the provisions of section 4-183."
"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." Light Rigging Co. v. Department of PublicUtility Control, 219 Conn. 168, 172, 592 A.2d 386 (1991)." [T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party CT Page 9347 claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) NewEngland Cable Television Assn., Inc. v. Department of PublicUtility Control, 247 Conn. 95, 103, 717 A.2d 1276 (1998).
In the present action, the parties do not dispute that Eastern is aggrieved by the DPUC's decision regarding the company's application for amended rate schedules. (Amended Appeal, ¶ 17; DPUC Answer, ¶ 17; OCC Answer, ¶ 17.) On the basis of facts in the record, the court finds that Eastern has a specific personal and legal interest in the subject matter of the DPUC's decision, as distinguished from a general interest of the community as a whole, in that the decision seeks to restrict this particular company's revenues and profits. Thus, the court concludes that Eastern is aggrieved and has standing to appeal.
 2. Timeliness
In compliance with General Statutes § 4-183 (c), the plaintiff served process on the DPUC, as well as the OCC, on October 16, 1997; (Sheriff's Return); and filed the appeal with the clerk of the Superior Court on October 16, 1997. These steps were taken within forty-five days after the mailing of the DPUC's final decision on September 3, 1997, as required by § 4-183 (c). This appeal is therefore timely.
 B. Standard of Judicial Review
Pursuant to General Statutes § 16-35, appeals from decisions of the DPUC are governed by § 4-183 of the Uniform Administrative Procedure Act (UAPA)."[4] See Connecticut Light Power Co. v.Department of Public Utility Control, 219 Conn. 51, 55,591 A.2d 1231 (1991); Basilicato v. Department of Public Utility Control, supra, 197 Conn. 322-23. In addition, § 16-19e (a) sets forth guiding principles for establishing the level and structure of rates of public utilities.[5]
On appeal from a DPUC decision, the trial court must "conduct a statutorily circumscribed inquiry, based on the administrative record, into the merits of the administrative decision. . . . A court may not reverse or modify an agency decision unless it CT Page 9348 determines that an appellant's substantial rights . . . have been prejudiced because the [agency's] findings, inferences, conclusions, or decisions contravene any one of the . . . six specific provisions [of § 4-183 (j)]. . . . The court may not substitute its own balance of regulatory considerations for that of the agency. . . . Its function is independently [to] assure itself that the DPUC has given reasoned consideration to each of the guiding factors expressed in [§ 16-19e (a)]." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Department of Public Utility Control, supra,219 Conn. 56-57.
"In reviewing the administrative rate decision, the court must, therefore, `ensure that the agency's decisionmaking process was conducted pursuant to the appropriate procedures and that the outcome of the process reflects reasoned decisionmaking — a reasonable application of relevant statutory provisions and standards to the substantial evidence on the administrative record. Section 4-183 [(j)] coupled with the presumption of validity that attends a DPUC rate order; Woodbury Water Co. v.Public Utilities Commission, [174 Conn. 258, 260, 386 A.2d 232
(1978)]; establishes a standard for judicial review that is appropriately deferential to agency decisionmaking, yet goes beyond a mere judicial "rubber stamping" of an agency's decisions.' [Connecticut Light Power Co. v. Department ofPublic Utility Control, 216 Conn. 627, 637, 583 A.2d 906
(1990)]." Connecticut Light Power Co. v. Department of PublicUtility Control, supra, 219 Conn. 57.
"Withing this context, judicial review of [this] action is governed by the UAPA; General Statutes §§ 4-166 through 4-189; and the scope of that review, the substantial evidence' rule, is restricted." Connecticut Light Power Co. v. Department ofPublic Utility Control, supra, 219 Conn. 57. "`Substantial evidence' exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Id. "With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) Id. "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation CT Page 9349 marks omitted.) Id., 57-58. "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Emphasis omitted.) Burinskas v. Department of Social Services,240 Conn. 141, 147, 691 A.2d 586 (1997).[6]
The determination of whether the DPUC's decision on December 2, 1998, increasing Eastern's rates to reflect inclusion of Pinewood, may operate retroactively is a question of the correct application of the law to undisputed facts. Similarly, the determination of whether the DPUC properly reduced the pro forma tax expense to reflect Eastern's net operating loss carried forwards involves no disputed facts but rather involves a discretionary determination made by DPUC pursuant to the guidelines of § 16-19e. "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) Connecticut Light Power Co. v. Texas-Ohio Power, Inc., 243 Conn. 635, 642,708 A.2d 202 (1998). "Therefore, [the court reviews] the administrative record to determine whether, in light of the evidence, the [DPUC] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . or whether, on the contrary, it has given reasoned consideration to the appropriate statutory factors." (Citation omitted; internal quotation marks omitted.) ConnecticutLight Power Co. v. Department of Public Utility Control, supra,219 Conn. 62-63.
 C. The Parties' Arguments 1. Retroactivity
Eastern's first ground of appeal is that the DPUC's decision of December 2, 1998, reopening the docket to include the assets of Pinewood in. plant in service, should operate retroactively from August 27, 1997, the date of the original decision in the docket. The OCC and the DPUC object to this argument on the ground that allowance of any rate recovery from such date would constitute illegal retroactive ratemaking.
It is important to note at this juncture that the court makes no decision with respect to whether the DPUC properly excluded the assets of the Pinewood water system from plant in service in its original decision rendered on August 27, 1997.[7] Although this was precisely one of the issues raised by Eastern's original CT Page 9350 appeal filed on October 16, 1997, the current rates in effect for Eastern reflect inclusion of the assets of Pinewood due to the DPUC's own initiative in reopening the administrative docket and calculating Eastern's rates to include such assets effective December 2, 1998. Eastern's acquisition of Pinewood having been completed, the DPUC "reopen[ed] this Docket to include Pinewood in recognition of the fact that this Company is in no position to carry assets without earning a return and that any additional financial hardship might ultimately be felt by ratepayers." (DPUC Supplemental Brief, March 8, 1999, Appendix A, p. 7.) Thus, the issue of whether the assets of Pinewood should be included in plant in service is now moot; and the only issue before the court with respect to Pinewood is whether the DPUC's December 2, 1998, decision establishing new rates may be retroactively applied.
The court agrees with the defendants that the DPUC's decision of December 2, 1998, may not be retroactively applied. "Ratemaking is necessarily present and prospective. . . . Rates are established for the future and it is the generally accepted rule that retroactive rate-making is beyond the power of a regulatory commission." (Citation omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Department ofPublic Utility Control, 40 Conn. Sup. 520, 536, 516 A.2d 888
(1982); see also Connecticut Light Power Co. v. Department ofPublic Utility Control, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535092 (June 9, 1995, Maloney, J.)
The rates established by the DPUC's decision rendered on August 27, 1997, were final as of that date. Eastern did not request a stay of that decision pursuant to General Statutes §4-183 (f) pending appeal.[8] Thus, these rates went into effect and were properly charged to the ratepayers.
General Statutes § 16-19 (a) provides, in relevant part, that "any rate approved by [the DPUC] shall be permitted until amended by the . . . department." Thus, the DPUC's decision on December 2, 1998, increasing Eastern's rates to reflect inclusion of Pinewood is necessarily prospective since "[c]onsumer rates . . . may not be changed retroactively." Connecticut Light Power Co. v.Department of Public Utility Control, supra, Superior Court, Docket No. 535092.
The court notes that the plaintiff has cited no authority in support of its position that the DPUC's December 2, 1998, CT Page 9351 decision may operate retroactively. In fact, such an approach strikes the court as fundamentally unfair to the ratepayers. Therefore, in light of the well-established rule that retroactive ratemaking is beyond the power of the DPUC, the court rejects Eastern's argument that the DPUC acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in refusing Eastern's request for recovery of the increased rate associated with inclusion of Pinewood from August 27, 1997, the date of the original decision on Eastern's rate application.
 2. Net Operating Loss Carried Forwards
Eastern's second ground of appeal is that the DPUC abused its discretion by reducing the pro forma tax expense to reflect net operating loss carried forwards in that such reduction constituted an unreasonable, irrational and inequitable transfer to ratepayers of an asset "earned" by the company. Eastern argues: "Unquestionably, the customers received a substantial benefit during the years the company operated at a loss. Since the ratepayers should have been paying rates sufficient to cover the expense shortfalls, it follows that they derived an aggregate financial benefit. . . . This is plainly inequitable and not only would it provide the customers with an undeserved windfall it would I also compound the losses already suffered by the company." (Plaintiff's Brief, May 7, 1998, pp. 19-20.)
The court disagrees with the plaintiff for several reasons. First, as a general proposition, a utility company is not ipso facto entitled on grounds of equity to charge higher rates than would otherwise be allowed in the present in an effort to recoup a perceived "undeserved windfall" to its ratepayers in the past. Eastern's operating losses, giving rise to its net operating loss carried forwards, are the product of rates previously approved and chargeable to the ratepayers. That these rates were apparently insufficient to cover expenses does not entitle Eastern on grounds of equity to shift its loss to the ratepayers. As the court stated in Connecticut Light Power v. Department ofPublic Utility Control, supra, 40 Conn. Sup. 536, "[o]nce rates are set by a regulating agency in accordance with statutory guidelines, the revenues realized belong to the company. The amount, if any, remaining after paying taxes, and operating expenses, including expenses of depreciation, is the company's compensation for the use of its property. Board of Public UtilityCommissioners v. New York Telephone Co., 271 U.S. 23, 31,46 S.Ct. 363, 70 L.Ed. 808 (1926). The company both bears the loss CT Page 9352 below a reasonable return and retains the profit above a reasonable return. Id., 32." Thus, however "inequitable" or "undeserved" the windfall resulting from paying lower rates than sufficient to cover expenses may have been, Eastern must bear the loss.
Moreover, Eastern's argument runs contrary to the prohibition against retroactive ratemaking discussed in the previous section. As noted above, the losses sustained by Eastern "are the product of rates previously approved and chargeable to the ratepayers."Connecticut Light Power Co. v. Department of Public UtilityControl, supra, Superior Court, Docket No. 535092. If the DPUC were to allow the present collection of higher rates simply to compensate Eastern for losses sustained in the past, "it would have the practical effect of changing the previous rates to something [higher]. The law does not permit the department to make such changes." Id.
Secondly, as the DPUC noted in its decision, Eastern "uses net loss carried forwards as a means to reduce tax expenses." (Emphasis added.) (ROR, Item XII, p. 19.) "A lower tax expense benefits the ratepayers because it results in a lower cost of service." Connecticut Natural Gas Corp. v. Public UtilitiesControl Authority, 183 Conn. 128, 144, 439 A.2d 282 (1981) Section 16-19e (a)(4) directs the DPUC to establish rates in accordance with the principle "that the level and structure of rates be sufficient, but no more than sufficient, to allow public service companies to cover their operating and capital costs. . . ." In its final filing, Eastern requested a pro forma income tax expense of $29,572. (ROR, Item XV-2, Exhibit D.) The plaintiff concedes that this amount represents the amount of income tax incurred "though not paid from current operatingrevenues." (Emphasis added.) (Plaintiff's Brief, May 7, 1998, p. 19.) To charge ratepayers an amount sufficient to cover income taxes of $29,572 when the average amount of taxes actually to be paid from current operating revenues is only $6,587 would violate the principle established in § 16-19e (a)(4). Thus, the DPUC was reasonably acting within its discretion when it reduced the pro forma expense for state and federal income taxes. If the DPUC did not, the ratepayers would pay for non-existent expenses. SeeConnecticut Natural Gas Corp. v. Public Utilities ControlAuthority, supra, 183 Conn. 144 (where court held PUCA properly reduced expense for taxes by the full amount of tax savings which resulted from plaintiff's filing of consolidated tax return, stating that "[i]f the PUCA did not, the ratepayers would pay for CT Page 9353 non-existent expenses").
Thirdly, the court notes that there is nothing in the record to indicate that the DPUC's treatment of Eastern's net operating loss carried forwards in the present case is inconsistent with that in previous rate cases. The OCC has attached a copy of theApplication of Ellington Acres Company For An Increase in Rates
in which the company's net loss carried forwards are reflected in the calculation of the proposed pro forma state and federal income tax expenses. (See OCC's Brief, September 30, 1998, p. 8 and Exhibit A.) Similarly, the DPUC has attached copies of three decisions in which it represents it has disallowed rate recovery for tax expenses where the respective utility companies reported net operating loss carried forwards: Docket No. 94-12-14,Application of Jewett City Water Company to Increase Its Rates; Docket No. 97-07-14, Application of Birmingham Utilities, Inc.to Increase Its Rates and Charges to All Classes of Customers; and Docket No. 96-12-26, Application of South Coventry Water SupplyCompany, Inc. For a Rate Adjustment and Approval of Long-TermFinancing. (See DPUC's Brief, September 30, 1998, p. 13, Appendix A, Appendix B, and Appendix C (compare Table II with Table III in each).) Eastern cites no authority and provides no copies of administrative precedents to the court in support of its position that the DPUC acted unreasonably, irrationally, illegally or in abuse of its discretion in calculating the pro forma tax expense.
Finally, the court rejects Eastern's argument that "[b]y not allowing Eastern to obtain in present rates revenues sufficient to cover income taxes generated on pro forma net income simply because Eastern is `able' to satisfy such present tax liabilities from its [net operating loss] carried forwards defeats the entire premise underlying [net operating loss] carried forwards." (Plaintiff's Brief, May 7, 1998, p. 21.) Eastern argues that net operating loss carried forwards "`are designed to permit a taxpayer to set off its lean years against its lush years and to strike something like an aver age taxable income computed over a period longer than one year.'" (Plaintiff's Brief, May 7, 1998, pp. 20-21, quoting Libson Shops, Inc. v. Koehler, 353 U.S. 382,386, 77 S.Ct. 990, 993, 1 L.Ed.2d 924, reh. denied,354 U.S. 943, 77 S.Ct. 1390, 1 L.Ed.2d 1542 (1947), and citing B. F.Goodrich Co. v. Dubno, 196 Conn. 1, 9, 490 A.2d 991 (1985).)
While the plaintiff may have described accurately the policy behind income tax legislation which allows for net operating loss carried forwards, it does not follow that such is the policy CT Page 9354 behind rate-making pursuant to General Statutes § 16-1 et seq. In fact, such a policy of balancing the lean years with the lush years flies in the face of well-established principles of ratemaking. "Past experience is, of course, an element in fixing rates and determining an allowable rate of return, but this does not mean that rates fixed for the future should be based upon a higher or lower rate of return because of high earnings or low earnings in the past." (Internal quotation marks omitted.)Connecticut Light Power Co. v. Department of Public UtilityControl, supra, 40 Conn. Sup. 536-37. Moreover, the court fails to see how reflection of net operating loss carried forwards in pro forma tax expense undermines the policy behind the deduction for net operating loss carried forwards. Eastern is still entitled, in terms of income tax liability, to use its net operating loss carried forwards which serve to balance its lean years with its lush years. This does not mean, however, that it is entitled to rates which do.
 VI. Conclusion
For the reasons expressed above, the court finds that the DPUC's determinations with respect to retroactivity of its December 2, 1998, decision and the treatment of. Eastern's net operating loss carried forwards were not unreasonable, arbitrary, illegal or an abuse of its discretion. Therefore, the plaintiff's appeal is dismissed.
Klaczak, J