BOARD OF EDUCATION OF THE TOWN OF AVON ET AL. *v.*
CONNECTICUT STATE EMPLOYEES
RETIREMENT COMMISSION
(13466)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

---

Argued December 15, 1988—decision released March 28, 1989

*Lisa B. Bingham,* with whom was *Lynn M. Daggett,* for the appellants (plaintiffs).

*Arnold B. Feigin,* assistant attorney general, with whom were *Barney Lapp,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* former attorney general, for the appellee (defendant).

HULL, J. The plaintiffs, the boards of education of the towns of Avon, Cromwell and Madison, filed a petition with the defendant Connecticut state employees retirement commission (commission) requesting that the commission issue a declaratory ruling on whether

the wages paid by the respective boards of education to their teachers for services rendered in connection with school-related extra duty and coaching assignments are subject to the social security tax under General Statutes §§ 7-452 through 7-459. The commission determined that such wages are subject to the social security tax. The plaintiffs appealed to the Superior Court, which affirmed the commission's ruling. The plaintiffs then appealed to the Appellate Court and we transferred the case to ourselves pursuant to Practice Book § 4023. We find no error.

A proper understanding of the issues presented in this case requires that we first discuss briefly the statutory framework of the social security system as it pertains to the claims of the parties. While participation in the social security system is mandatory for most employees in the private sector, employees of state and local governments can be brought into the system only by means of a voluntary agreement entered into by the states with the federal government. 42 U.S.C. § 418 (a) (1);[1] 20 C.F.R. § 404.1201 (a). The state of Connecticut entered into such an agreement on January 24, 1952. The agreement provides that the social security system is extended to include the employees of the Connecticut municipalities listed in the appendix to the agreement. The towns of Avon, Cromwell and Madison, within which the plaintiff boards of education are respectively located, are listed in this appendix.

---

[1] Title 42 of the United States Code, § 418 (a) (1) provides: "VOLUNTARY AGREEMENTS FOR COVERAGE OF STATE AND LOCAL EMPLOYEES (a) PURPOSE OF AGREEMENT (1) The Secretary shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this title to services performed by individuals as employees of such State or any political subdivision thereof. Each such agreement shall contain such provisions, not inconsistent with the provisions of this section, as the State may request."

In Connecticut, before a municipality may be brought into the social security system under the federal-state agreement, the municipality must, by vote of its legislative body and with the approval of the commission,[2] apply for membership in the system. General Statutes § 7-453.[3] Upon acceptance of a municipality into the system, the municipality and the commission enter into an agreement specifying the terms and conditions of

---

[2] The commission is the appointed agent of the state of Connecticut in all matters relating to the social security system and the municipalities entering it. General Statutes §§ 5-155a (d) and 7-453. The commission is also charged by statute with the administration of the state employees retirement system; General Statutes § 5-155a (a); and the municipal employees retirement system. General Stautes § 5-155a (c).

[3] "[General Statutes] Sec. 7-453. MEMBERSHIP IN SYSTEM. CONTRIBUTIONS. Any municipality of the state may, by vote of its legislative body and with the approval of the commission, apply for membership in the system or provide coverage for employees in any of the services which it may have elected to exclude under section 7-454. The commission is appointed agent for the state and is authorized to act in such capacity in all matters relating to the system and to the municipalities entering it. All agreements to be entered into between the state and the Secretary and between the state and the municipality shall be subject to the examination and approval of the attorney general before being consummated. The commission is authorized to make regulations governing the procedure to be followed by municipalities in entering and maintaining membership in the system. A municipality shall deduct an amount from the wages of its employees whose services are covered under the system by federal-state agreement and shall contribute an equal amount for each employee on its own behalf so that the sum of these amounts shall be equivalent to the taxes which would be imposed by the Federal Insurance Contributions Act if the services of employees covered by the agreement constituted employment as defined in that act. The commission, upon receipt of such contributions, shall, in accordance with applicable regulations, verify them for correctness and endorsement and deliver them to the Secretary of the Treasury of the United States. The state shall pay to the Secretary of the Treasury, at such time or times as may be prescribed under the Social Security Act, contributions equal to the taxes which would be imposed by the Federal Insurance Contributions Act if the services covered by the agreement constituted employment within the meaning of that act."

A state may permit its political subdivisions to decide whether to include the subdivisions' employees under a federal-state social security agreement. Social Security Administration Handbook § 1001.

the municipality's participation in the system. General Statutes §§ 7-453, 7-457. Municipalities and their employees participating in the social security system are taxed in a manner virtually identical to that of private sector employers and employees: "A municipality shall deduct an amount from the wages of its employees whose services are covered under the system by federal-state agreement and shall contribute an equal amount for each employee on its own behalf so that the sum of these amounts shall be equivalent to the taxes which would be imposed by the Federal Insurance Contributions Act . . . ." General Statutes § 7-453.

The extension of the social security system to a participating municipality's employees, however, is not all-inclusive. Connecticut law provides that certain state and municipal positions that are already covered by local and state retirement systems shall be excluded from social security coverage. General Statutes § 7-454.[4] Since retirement benefits for teachers in Con-

---

[4] "[General Statutes] Sec. 7-454. EMPLOYEES NOT INCLUDED. In determining the municipal employees entitled to participate in the system and the extent of their participation, all service performed by an employee in the employ of any municipality which joins the system, for such employer, shall be included except as provided in this section. The following services shall be excluded: (1) Services which, in the absence of federal-state agreement, would constitute 'employment' as defined in the Social Security Act, (2) services of individuals in positions covered under the Connecticut state teachers' retirement association other than services performed by individuals to whom Section 218 (c) (3) (B) of the Social Security Act is applicable; services of individuals in policemen's or firemen's positions covered under fund A or fund B or local retirement systems and (3) services which, under the Social Security Act, may not be included in an agreement between the state and the Secretary entered into under sections 7-452 to 7-459, inclusive. Service which under the Social Security Act may be included in an agreement only upon certification by the governor in accordance with Section 218 (d) of said act shall be included if and when the governor issues, with respect to such service, a certificate to the Secretary pursuant to section 7-455. Any municipality applying for membership in the system may elect to exclude from membership in the system the following: (a) All services in any class or classes of elective positions, part-time positions or positions the compensation for which is on a fee basis, (b) student service to

necticut are provided by the Connecticut Teachers' Retirement System; General Statutes § 10-183b et seq.; teaching positions are among those municipal positions excluded from social security coverage and taxation under General Statutes § 7-454. Specifically, § 7-454 (2) provides an exemption for "individuals in positions covered under the Connecticut state teachers' retirement [system]."

Having laid the preliminary statutory groundwork for review of this appeal, we now look to the factual and procedural history of this case. The source of the controversy between the parties can be traced to Public Acts 1971, No. 185. That act revised General Statutes § 10-160 (now § 10-183b [3]),[5] which defines a teacher's "annual salary" for purposes of the teachers' retirement system. Specifically, Public Acts 1971,

the fullest extent such coverage is permitted under Section 218 of the Social Security Act, (c) services performed by individuals to whom Section 218 (c) (3) (B) of the Social Security Act is applicable or (d) any services which may be optionally excluded under Section 218 (c) of the Social Security Act. Any municipality which joined the system prior to July 8, 1955, shall be deemed to have elected exclusion (c). Where any municipality covers under the agreement the services described in exclusion (c), the services of any individual thereby covered shall cease to be covered by the agreement if he thereafter becomes eligible to be a member of a retirement plan, but only if the agreement is not already applicable to such plan pursuant to Section 218 (d) of the Social Security Act. Nothing in sections 7-451 to 7-459, inclusive, shall prevent coverage under the system in accordance with Section 218 (d) (8) of the Social Security Act of services of individuals in positions covered by more than one retirement system. Where, prior to June 29, 1959, services in positions covered by a retirement system have been covered under the system, the legislative body of a municipality may request that services of individuals excluded from such coverage because such positions were covered by another retirement system be included under the system, and such services shall be covered under the system in accordance with Section 218 (d) (8) of the Social Security Act."

[5] General Statutes § 10-183b (3) provides in pertinent part: " 'Annual Salary' means the annual salary rate for services as a Connecticut teacher during a school year but not including unused sick leave, unused vacation, terminal pay, coaching or extra duty assignments, unless compensation for coaching or extra duty assignment was included in salary for which contributions were made prior to July 1, 1971."

No. 185 excluded from the definition of "annual salary" any sums paid to a teacher "for any extra duty assignments, coaching, unused sick leave, unused vacation or terminal pay." Compensation for these items previously had been treated as part of a teacher's annual salary and was therefore considered to be excluded from social security taxation under the exemption for teachers contained in General Statutes § 7-454 (2). Because Public Acts 1971, No. 185 directed that extra duty and coaching assignments should no longer be considered part of a teacher's annual salary for purposes of the teachers' retirement system, however, a question arose as to whether the earnings received by teachers in connection with such assignments were still exempt from social security taxation under § 7-454 (2). The commission made known its position on this matter through a November 19, 1971 letter, sent to all participating municipalities, stating that due to the statutory change in the law, "services in the position of coach are covered [by social security] and wages should be reported."

Apparently, the commission's recommendation went unheeded by the plaintiffs since, as a result of an audit conducted in 1984, the commission found that the plaintiffs owed back social security taxes for wages paid to their teachers for extra duty[6] and coaching assignments. The plaintiffs disputed the commission's finding and petitioned the commission for a declaratory ruling[7] on the issue of whether such wages were sub-

---

[6] Extra duty assignments include positions such as drama coach and director of the yearbook committee.

[7] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pur-

ject to the social security tax under General Statutes §§ 7-452 through 7-459.

Prior to issuing its ruling, the commission conducted a formal hearing on the matter.[8] General Statutes § 4-177 et seq. At the hearing, the plaintiffs contended that the wages paid[9] to their teachers for services per-

suant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases.''

[8] In their petition for a declaratory ruling, the plaintiffs requested that the commission rule on the following questions:

"(I) Are the Petitioners independent 'municipalities' within the meaning of Conn. Gen. Stat. § 7-452 (1) and therefore are not subject to its requirements because they never entered into an agreement to participate in the Social Security system?

"(II) Are the wages paid by the Petitioners for services of teachers in coaching and extra-duty assignments excluded from the Social Security tax under Conn. Gen. Stat. § 7-454 (2)?

"(III) May the Commission enforce a new statutory interpretation requiring contributions for coaching pay retroactively without following rulemaking procedures under the Uniform Administrative Procedure Act, Conn. Gen. Stat. § 4-166 et seq., ('UAPA') despite a thirty year past practice to the contrary that enjoyed tacit legislative approval?''

[9] With regard to the appointment and payment procedures for extra duty and coaching assignments, the commission in its declaratory ruling made the following findings of fact:

"Number of Stipends. In connection with extracurricular positions, in Avon there are approximately 113 'stipends,' or separate salary accounts; in Cromwell about 51; and in Madison about 70. More than one of the 'stipends' may be paid to one individual.

"Appointment Procedures and Term of Appointment. Although the [plaintiffs] do not appear to follow exactly the same procedures in arranging to fill extracurricular positions, typically the school principal has the extracurricular position posted, then individuals who are teachers apply to fill the position. After looking over the applications the principal recommends an individual to the Assistant Superintendent who reviews the recommendation and, if it is approved, submits the recommendation to the Board of

formed in connection with extra duty and coaching positions were not subject to social security taxation on any one of three grounds. The plaintiffs claimed that: (1) they were excluded from the social security system under General Statutes § 7-452 (1)[10] because they were independent "municipalities" that had never separately agreed to participate in the system; (2) the compensation paid for extra duty and coaching assignments fell within the statutory exemption for teacher salaries contained in § 7-454 (2); and (3) the commission's letter informing them of their taxability was invalid because of the absence of a properly promulgated regulation pursuant to the Uniform Administrative Procedure Act. General Statutes § 4-166 et seq. The commission, however, was not persuaded by the plaintiffs' arguments and ruled that the wages in question were subject to the social security tax under General Statutes §§ 7-452 through 7-459.

Education which accepts or rejects it. The appointments are annual in Avon and Cromwell, continuous, during satisfactory performance, in Madison.

"Contract Forms Used. In Avon no set form of contract is used when an appointment is made to an extracurricular position. In Cromwell a form is executed. In Madison either a paragraph is added to the annual appointment letter explaining the circumstances of the appointment and the amount of compensation for the position or a separate letter is sent concerning the extracurricular position.

"Payment. In Avon all those in extracurricular positions, except the part-time coach position, are paid bi-weekly as part of the check they receive as teachers. In Cromwell they typically receive separate checks at the end of each season or semester. In Madison payment is one half at the beginning of the season or semester and one half at the end of the season or semester."

[10] General Statutes § 7-452 (1) provides: " 'Municipality' means any town, consolidated town and city, consolidated town and borough, borough, fire district, school district, district department of health, regional planning agency, probate district, housing authority, flood commission or authority established by special act or other municipal association created by special law or by general law or an instrumentality of any of these, if such instrumentality is a distinct juristic entity legally separate from any of the above and its employees are not, through this relation, employees of one of the above."

Having exhausted their administrative remedies, the plaintiffs appealed to the Superior Court; General Statutes § 4-183; where they presented the same claims to the trial court. The trial court rejected each of the plaintiffs' claims and upheld the ruling of the commission.

The plaintiffs' appeal to this court assigns error to the trial court's rejection of their claims. Before addressing the merits of the plaintiffs' claims, however, we must first consider the applicable standard of review. "The standard of judicial review of administrative agency rulings is well established. Section 4-183 (g) permits modification or reversal of an agency's decision 'if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. . . . Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Citations omitted.) *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717, 546 A.2d 830 (1988). It is for the courts, however, to expound and apply governing principles of law. Id.; see also *United Parcel Service, Inc.* v. *Administrator,* 209 Conn. 381, 385–86, 551 A.2d 724 (1988); *Real Estate Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979).

This case presents questions of law turning upon the interpretation of statutes. Specifically, the dispute

between the parties centers around the interpretations to be given General Statutes § 7-452 (1), which defines a "municipality" for purposes of participation in the social security system, and General Statutes § 7-454 (2), which provides a qualified exemption from social security coverage and taxation for teachers. Such questions of statutory interpretation invoke "a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 718. "Ordinarily 'the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference.' " *Texaco Refining & Marketing Co.* v. *Commissioner*, 202 Conn. 583, 599, 522 A.2d 771 (1987), quoting *Schlumberger Technology Corporation* v. *Dubno*, 202 Conn. 412, 423, 521 A.2d 569 (1987).

I

The plaintiffs claim initially that the trial court erred in failing to conclude that they are each an independent "municipality" within the meaning of General Statutes § 7-452 (1) and therefore not subject to the social security tax since they, as "municipalities," never agreed to participate in the social security system pursuant to General Statutes §§ 7-453 and 7-457. The plaintiffs concede, as they must, that their argument hinges on whether they fall within the definition of "municipality" contained in § 7-452 (1). That section provides, for purposes of participation in the social security system, that a "municipality" shall include the following: "[A]ny town, consolidated town and city, consolidated town and borough, borough, fire district, school district, district department of health, regional planning agency, probate district, housing authority, flood commission . . . or an instrumentality of any of these, if such

instrumentality is a distinct juristic entity legally separate from any of the above and its employees are not, through this relation, employees of one of the above.'' In its declaratory ruling, the commission rejected the plaintiffs' argument, stating that they did not fall within the definition of "municipality" under § 7-452 (1) and, consequently, that no separate agreement between the state and the plaintiffs was required to include them, and their employees, within the social security system. We agree with the commission.

Boards of education, such as the plaintiffs, are conspicuously absent from the language of § 7-452 (1). In view of this statutory omission, the plaintiffs' bald assertion that the "plain meaning" of the statute includes them within its definition is utterly without merit. "[I]n the absence of ambiguity, courts cannot read into statutes, by construction, provisions which are not clearly stated . . . ." *Finkenstein* v. *Administrator,* 192 Conn. 104, 110, 470 A.2d 1196 (1984).

Alternatively, the plaintiffs argue that they qualify as municipalities under § 7-452 (1) because a board of education is the equivalent of a "school district," which is included in the definitional language of the statute. The plaintiffs cite General Statutes § 10-240 in support of their contention that the legislature intended to equate boards of education with school districts. Section 10-240 provides: "Each town shall through its board of education maintain the control of all the public schools within its limits and for this purpose shall be a school district and shall have all the powers and duties of school districts . . . ." Clearly, § 10-240 provides that "[e]ach *town* . . . shall be a school district," (emphasis added) and that each town's board of education is merely the instrumentality through which the *town* "maintain[s] the control of all the public schools within its limits." The plain language of the statute provides that each town, not each board of education, is

a school district for the purposes recited therein. We will not torture the words or sentence structure of a statute to import an ambiguity where the ordinary meaning of the language leaves no room for it. *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 98, 491 A.2d 368 (1985). Thus, we conclude that a board of education is not a school district, and, accordingly, the plaintiffs do not fall within the definition of "municipality" set forth in § 7-452 (1).[11]

In a related claim, the plaintiffs assert that "a school board's employees are employees of the school board and *not* employees of the town." (Emphasis in original.) The plaintiffs' argument on this point is largely unarticulated. It appears, however, to be directed toward the fact that each town's social security agreement with the state provides social security coverage for municipal employees only. Thus, if the teachers working under the plaintiffs are deemed to be the plaintiffs' employees exclusively, and not employees of the towns they serve, then the teachers would not be covered under the towns' agreements to participate in the social security system and, hence, their wages, including those received for extra duty and coaching assignments, would not be subject to social security taxation. Clearly, such an argument holds true only if the teachers are considered not to be town employees. The plaintiffs, however, cite no persuasive authority in support of the proposition that public school teachers are not town employees. Their reliance on *Sansone* v. *Bechtel,* 180 Conn. 96, 429 A.2d 820 (1980), is misplaced. In that case, a public school student sued his music teacher for the infliction of allegedly excessive corporal punishment when the student misbehaved in class. The sole issue in that case was whether the teacher was a "state employee" for purposes of Gen-

---

[11] The plaintiffs do not make a claim that they meet the "distinct juristic entity" test set forth in General Statutes § 7-452 (1).

eral Statutes § 4-165,[12] which grants state officers and employees immunity from personal liability. In holding that the music teacher did not have immunity under the statute, we stated that "teachers as employees of a town board of education are also not employed in the state government." Id., 100. In *Sansone* we did not, however, rule on the question pertinent to this case, i.e., whether teachers employed by a town board of education *are also employees of the towns they serve.*

With regard to that question, the commission in its brief directs this court's attention to the case of *Cheshire* v. *McKenney*, 182 Conn. 253, 438 A.2d 88 (1980), which we find dispositive. In that case, the plaintiffs, the town of Cheshire and certain of its residents, sought to test the defendant's right to hold the position of councilman-at-large while also holding a teach-

---

[12] "[General Statutes] Sec. 4-165. IMMUNITY OF STATE OFFICERS AND EMPLOYEES FROM PERSONAL LIABILITY. No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. For the purposes of this section 'scope of employment' shall include, but not be limited to, representation by an attorney appointed by the public defender services commission as a public defender, assistant public defender or deputy assistant public defender or an attorney appointed by the court as a special assistant public defender of an indigent accused or of a child on a petition of delinquency, representation by such other attorneys, referred to in section 4-141, of state officers and employees, in actions brought against such officers and employees in their official and individual capacities, the discharge of duties as a trustee of the state employees retirement system, the discharge of duties of a commissioner of superior court hearing small claims matters or acting as a fact-finder, arbitrator or magistrate or acting in any other quasi-judicial position, and the discharge of duties of a person appointed to a committee established by law for the purpose of rendering services to the judicial department; provided such actions arise out of the discharge of the duties or within the scope of employment of such officers or employees. For purposes of this section, members or employees of the soil and water district boards established pursuant to section 22a-315 shall be considered state employees."

ing position in the town's public school system. The plaintiffs claimed that the defendant was not legally entitled to maintain a position on the council because of a town charter provision prohibiting council members from holding another town job. The question presented was whether the defendant, in his capacity as a public school teacher, was an employee of the town of Cheshire. We stated: "[W]e have expressly held that members of a local board of education are officers of the town they serve and that the persons employed by them in the performance of their statutory functions are employees of the town. *Mase* v. *Meriden,* 164 Conn. 65, 67, 316 A.2d 754 (1972); *Wallingford* v. *Board of Education,* [152 Conn. 568, 573, 210 A.2d 446 (1965)] . . . . Although both *Mase* and *Wallingford* involved nonprofessional employees, there is nothing in the language or the reasoning of those cases that suggests that professional persons in a school system should not also be considered employees of the town. . . . These considerations lead us to the conclusion that local boards of education act on behalf of the municipality they serve as well as in fulfillment of their state mandates *and that their professional and nonprofessional employees are employees of the municipality* and are subject to valid provisions of the municipal charter." (Emphasis added; citations omitted.) *Cheshire* v. *McKenney,* supra, 259–60.

Accordingly, we conclude that the teachers employed by the plaintiffs are also employees of the towns they serve and are thus covered under the towns' agreements to participate in the social security system.[13]

---

[13] The plaintiffs also contend that their teachers should be classified as state employees, thereby entitling them, under General Statutes § 5-158 (a) (1) (C), to an exemption from social security coverage for "part-time" positions such as coaching and extra duty assignments. This claim was not raised by the plaintiffs at any of the proceedings below. We therefore decline to address it. Practice Book § 4185; see *Burnham* v. *Administrator,* 184 Conn. 317, 322–23, 439 A.2d 1008 (1981).

## II

The plaintiffs next claim that the payments made to their teachers for extra duty and coaching assignments are exempt from social security taxation under General Statutes § 7-454 (2), which provides an exclusion from social security coverage for the "services of individuals in positions covered under the Connecticut state teachers' retirement [system]." The plaintiffs argue vigorously that extra duty and coaching assignments are inherently part of the job of a teacher, and that these assignments and the earnings received therefrom thus fall within the § 7-454 (2) exemption. In its declaratory ruling, however, the commission determined that extra duty and coaching assignments are "separate position[s], apart from the teacher position," and that the § 7-454 (2) exemption therefore did not apply to earnings received in connection with those assignments.

We begin our analysis by noting that the § 7-454 (2) exemption extends only so far as those "positions covered" by the Connecticut Teachers' Retirement System, General Statutes § 10-183b et seq. Consequently, we look to that act to determine more precisely what "positions" it covers. In this respect, we find that General Statutes § 10-183b (3) is of controlling significance. That section defines a teacher's "annual salary," for purposes of the teachers' retirement system, as "the annual salary rate for service as a Connecticut teacher during a school year *but not including unused sick leave, unused vacation, terminal pay, coaching or extra duty assignments* . . . . " (Emphasis added.) This definition is of pivotal importance because mandatory deductions for funding of the teachers' retirement system may only be taken from a teacher's "annual salary."

General Statutes § 10-183n.[14] Therefore, earnings from those items not included within the definition of "annual salary," such as extra duty and coaching assignments, are not subject to mandatory deductions for funding of the retirement system.

Despite this statutory definition, the plaintiffs would have us exempt these earnings from social security taxation as well, under § 7-454 (2), thereby permitting such earnings to pass to the teachers completely free of any retirement tax at all. We find no intent on the part of the legislature to create such an anomalous situation, where a portion of a teacher's earnings would be subject neither to the social security tax nor to deductions for the teachers' retirement system. "[I]f there are two possible interpretations of a statute and one alternative proves unreasonable or produces the possibility of bizarre results, then the more reasonable alternative should be adopted." *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985).

A more reasonable construction of the social security exemption contained in § 7-454 (2), and one which avoids the "bizarre result" of totally tax-free earnings, is to tailor the exemption to include only those earnings that fall within a teacher's "annual salary" as defined by § 10-183b (3). By making the § 7-454 (2) exemption coextensive with the § 10-183b (3) definition of "annual salary," the problem of a tax-free earnings loophole for teachers involved in extra duty and coaching activities is eliminated without diminishing the exemption's intended scope and effect.

Accordingly, in view of the fact that compensation for extra duty and coaching assignments is expressly

---

[14] General Statutes § 10-183n (a) (4) provides in pertinent part: "DUTIES OF TEACHERS' EMPLOYERS. TRANSMISSION OF DEDUCTIONS. (a) Each employer shall . . . (4) deduct each month six per cent of one tenth of such teacher's annual salary rate as directed by [the teachers' retirement board] and any additional voluntary deductions as authorized by such teacher . . . . "

excluded from the definition of "annual salary" contained in § 10-183b (3), we conclude that the payments made by the plaintiffs to their teachers in connection with such services are not exempted from social security taxation under § 7-454 (2). Such earnings are, therefore, subject to the social security tax pursuant to General Statutes §§ 7-452 through 7-459.

## III

Finally, the plaintiffs claim that the commission's November 19, 1971 letter apprising participating municipalities of the passage of Public Acts 1971, No. 185, and its effect on coaching payments to teachers, constituted an invalid "regulation" in that it was not promulgated in accordance with the provisions of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Consequently, the plaintiffs contend that this relieves them of any obligation to comply with the contents of the letter as it pertains to the payment of social security taxes. The commission, on the other hand, maintains that the letter cannot be considered a "regulation" within the meaning of the UAPA and therefore compliance with the rulemaking provisions of that act was unnecessary.

We need not address the issues of whether the commission's letter constituted an attempt at rulemaking and, if so, whether the commission complied with the applicable rulemaking provisions of the UAPA, since the letter was drafted before the UAPA became effective in Connecticut. The letter was sent to the plaintiffs on or about November 19, 1971; the UAPA, however, did not become effective in Connecticut until January 1, 1972. See Public Acts 1971, No. 854, § 21. Therefore, the letter was not subject to the provisions of the UAPA and any alleged noncompliance on the

part of the commission with regard to that act's procedural requirements for rulemaking is immaterial.[15]

There is no error.

In this opinion the other justices concurred.

---

[15] We have examined the plaintiffs' briefly stated argument that they were denied procedural due process because "no attempt was made by the Commission to afford *school districts* notice or an opportunity to be heard prior to the Commission's decision in 1971 to subject teachers' coaching and extra-duty pay to the social security tax." (Emphasis added.) In view of our conclusion that the plaintiffs are not "school districts," they lack standing to assert any claim on behalf of school districts allegedly affected by the commission's actions. Cf. *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 589, 508 A.2d 735 (1986) (a party may not claim that a provision is invalid because it impermissibly impinges upon the due process rights of others).