41 A.3d 267 (2012)
304 Conn. 462
Judy RETTIG et al.
v.
TOWN OF WOODBRIDGE et al.
Nos. 18312, 18422.
Supreme Court of Connecticut.
Argued December 2, 2011.
Decided April 24, 2012.
*269 David N. Rosen, New Haven, with whom was Maureen E. Driscoll, Fairfield, for the appellants (named plaintiff et al.).
Thomas R. Gerarde, Hartford, with whom was Bethany B. Karas, Waterbury, for the appellees (named defendant et al.).
Michael F. O'Connor, with whom, on the brief, was Scott R. Ouellette, North Haven, for the appellees (defendant town of Orange et al.).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
PALMER, J.
The dispositive issue in these consolidated appeals[1] is whether an employee of a municipal district established pursuant to General Statutes § 7-330[2] is an employee of the towns comprising the district for purposes of General Statutes § 31-284(a),[3] the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The named plaintiff, Judy Rettig,[4] appeals[5] from the judgment rendered by the trial court in favor of the named defendant, the town of Woodbridge, and the defendant towns of Bethany, *270 Orange and Prospect, among other defendants.[6] The plaintiff commenced this action against the defendants pursuant to General Statutes § 52-557n,[7] seeking damages for injuries that she sustained when she slipped and fell in the course of her employment as an animal control officer for the district animal control. The district animal control was established by the defendants pursuant to § 7-330, which permits two or more towns to form a "district" for the performance of any municipal function that the member towns may, under any provision of the General Statutes, perform separately. On appeal, the plaintiff claims that the trial court incorrectly concluded that the defendants were her employer and, therefore, that her claims were barred by the exclusivity provision of the act. We disagree and, accordingly, affirm the judgment of the trial court.[8]
The following undisputed facts and procedural history are relevant to our disposition of this appeal. In 1988, in accordance with the provisions of General Statutes (Rev. to 1987) § 22-331a (a),[9] *271 the defendants entered into an agreement to establish a regional dog pound at 135 Bradley Road in the town of Woodbridge. Under that agreement, the defendants agreed to be served by a regional canine control officer provided by the state department of agriculture. In 1992, the state notified the defendants that it no longer would provide an animal control officer for the region. In light of the state's withdrawal of support, the defendants dissolved the regional dog pound and converted it to a municipal district in accordance with § 7-330. Under the municipal animal control district agreement entered into by the defendants, the animal control facility that had served as the regional dog pound continued to serve as the animal control facility for the newly formed district, with each town paying its proportionate share of the cost of maintaining that facility. With respect to the governance, staffing and finance of the district animal control, the agreement provided in relevant part: "The affairs of the [d]istrict hereby established shall be managed by a [b]oard consisting of two (2) members from each constituent municipality, appointed by the [b]oard of [s]electmen, the [t]own [c]ouncil, or [b]oard of [a]ldermen for each [t]own, as applicable....
"Current operating expenses for the [d]istrict shall be borne by each [t]own in proportion to the following percentages, which are calculated based upon the 1990 census: [Bethany, 13.9 percent; Orange, 38.7 percent; Woodbridge, 23.9 percent; and Prospect, 23.5 percent]....
"Each [t]own hereby agrees to make a yearly budget appropriation sufficient to pay its financial obligations under this [a]greement, upon a payment schedule agreed to by at least three of the four chief elected officials of the member [t]owns.
"Each annual operating budget must be approved by the [d]istrict [b]oard and by the chief elected officials of at least three of the four member [t]owns....
"The [d]istrict is formed to furnish or provide, for the joint use and benefit of the member [t]owns, services, personnel, facilities, equipment and other property or resources for the purpose of administering and enforcing the laws relating to dogs and other animals. The [d]istrict shall be served by a [d]istrict animal control officer and such assistants as shall be deemed necessary by the [d]istrict [b]oard, to be appointed by the [d]istrict [b]oard, who shall also be appointed by the proper appointing authority in each [t]own as the municipal control officer or such assistants in such member [t]own for the administration and enforcement of laws related to dogs and other animals within the limits of all member [t]owns. The working conditions, compensation, benefits, personnel rules, appointment and removal of such animal control officer or assistants ... shall be determined solely by the [d]istrict [b]oard. The [b]oard is hereby authorized to sell, lease, acquire, contract for and *272 otherwise arrange for the real or personal property, equipment and services necessary or advisable for the conduct of the [d]istrict's business; subject, however, to the budget approval process set forth ... above, and subject also to the further proviso that any expenditure in excess of [$2000] shall be subject to the prior written approval of at least three of the respective chief elected officials of the member [t]owns."
The plaintiff was hired by the district animal control in 2001 to serve as its animal control officer. In accordance with the provisions of the municipal animal control district agreement, the district animal control paid her salary and benefits out of its budget and purchased workers' compensation insurance on her behalf. On January 9, 2005, while in the course of performing her duties, the plaintiff slipped and fell in the driveway of the district animal control, sustaining a serious ankle injury, among other injuries. The plaintiff filed a timely workers' compensation claim against the district animal control, which it accepted and ultimately settled for $800,000. The plaintiff also commenced this action against the defendants pursuant to § 52-557n, alleging, inter alia, negligence and nuisance. The defendants asserted several special defenses, including that the plaintiff's claims were barred (1) by the exclusivity provision of the act, (2) pursuant to the exclusivity of the remedy provided under the highway defect statute; see General Statutes § 13a-149; and (3) under § 52-557n, which limits the liability of municipalities under certain circumstances. The defendants subsequently filed motions for summary judgment, relying on the claims raised in their special defenses.
In opposing the defendants' motions for summary judgment, the plaintiff argued, inter alia, that the exclusivity provision of the act does not bar her claims because the defendants lacked the requisite control over her employment to satisfy the jurisdictional standard of an employer under the act. See Doe v. Yale University, 252 Conn. 641, 680-81, 748 A.2d 834 (2000) ("[t]he right to control test determines the [relationship between a worker and a putative employer] by asking whether the putative employer has the right to control the means and methods used by the worker in the performance of his or her job" [internal quotation marks omitted]). In support of this contention, the plaintiff relied primarily on the municipal animal control district agreement, pursuant to which the defendants had agreed to delegate to the district animal control board (district board) sole control over the terms and conditions of her employment. The plaintiff noted that, under that agreement, the district board had exclusive authority to set her hours, assign her duties, supervise her work, fix her salary and determine her benefits. The plaintiff maintained that, to the extent that the municipal animal control district agreement did not establish conclusively that the district animal control was her employer rather than the defendants, it at least raised a genuine issue of material fact as to that issue sufficient to survive a motion for summary judgment.
The trial court disagreed, concluding that the district board was analogous to a municipal board of education. The trial court explained that, under Wallingford v. Board of Education, 152 Conn. 568, 573, 210 A.2d 446 (1965), members of a local board of education are deemed to be officers of the municipality they serve, whereas employees of the district board are considered employees of the municipalities served by the district board. The court further observed that, in Mase v. Meriden, 164 Conn. 65, 66-67, 316 A.2d 754 (1972), this court relied on Wallingford in concluding that, for purposes of applying the exclusivity *273 provision of the act, an employee of a local board of education was an employee of the town served by the board. The trial court reasoned that, "[i]nasmuch as the legislature has deemed local and regional boards of education identical, there is no logical reason to conclude that an employee of a regional board of education would not be an employee of the towns that participate in the regional board of education." The trial court also explained that, "[j]ust as members of the [district] board ... are officers of the towns they serve, so, too, are the employees of the district animal control facility employees of the towns participating in the facility." Having determined that the plaintiff's claims were controlled by Mase, the trial court did not reach the defendants' other special defenses. This appeal followed.
On appeal, the plaintiff renews her argument that the act is inapplicable to her claims because the record makes clear that she and the defendants were never in an employment relationship. The plaintiff contends that the trial court, in reaching a contrary conclusion, misconstrued Mase as having created an exception to the right to control test set forth in Doe. The plaintiff maintains that, although Mase held that employees of a local board of education are employees of the town served by the board, that holding was limited to cases in which a municipality, pursuant to its authority under the Home Rule Act, General Statutes § 7-188, can impose the civil service requirements of its town charter on board employees. The plaintiff further argues that, because she is not subject to the civil service requirements of the defendant towns, the reasoning in Mase is inapplicable. Finally, the plaintiff contends that the trial court, in addition to misconstruing our holding in Mase, extrapolated several principles from the case that are unwarranted, including that the district board is analogous to a municipal board of education, that employees of a regional board of education necessarily would be considered employees of each of the municipalities comprising the region, and that the same rules that apply to local boards of education should apply to district boards. The plaintiff proffers several reasons as to why these principles are unfounded. We find none of the plaintiff's arguments persuasive and conclude that the trial court correctly determined that an employee of the district animal control is an employee of the municipalities served by the district for purposes of the exclusivity provision of the act.[10]
We begin our review of the plaintiff's claim by setting forth certain relevant statutory provisions. General Statutes § 7-193(b) provides in relevant part that "[e]ach municipality may have any municipal *274 officers, departments, boards, commissions and agencies which are specifically allowed by the general statutes or which are necessary to carry out any municipal powers, duties or responsibilities under the general statutes...." One such municipal responsibility is the duty to maintain a dog pound or, alternatively, to participate in a regional dog pound. See General Statutes § 22-336. Under General Statutes § 7-330, "[a]ny two or more towns, cities or boroughs may ... vote to form a district for the performance of any municipal function which the constituent municipalities of such district may, under any provision of the general statutes or of any special act, perform separately. The affairs of any such district shall be managed by a board consisting of two members from each constituent municipality appointed by the board of selectmen of towns, the council or board of aldermen of cities and the board of burgesses of boroughs." Under General Statutes § 7-331, "[t]he proportional share of each constituent municipality of the indebtedness and current expenditures of the district for its projects under the provisions of sections 7-330 to 7-332, inclusive, shall be determined by the board, which board shall have all the powers and duties with regard to such projects as such constituent municipalities would have severally." Under General Statutes § 7-332, a municipality "may, by vote of its legislative body, elect to withdraw from such district, but such withdrawal shall not be effective until six months after such vote, nor shall such withdrawal relieve such municipality of any liability which it incurred as a member of such district."
This appeal also implicates the workers' compensation statutes and, in particular, the exclusivity provision of the act. "The purpose of the [act] ... is to provide compensation for injuries arising out of and in the course of employment, regardless of fault.... Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount.... In return, the employee is compensated for his or her losses without having to prove liability.... In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation.... The intention of the framers of the act was to establish a speedy, effective and inexpensive method for determining claims for compensation." (Citations omitted; internal quotation marks omitted.) Doe v. Yale University, supra, 252 Conn. at 672, 748 A.2d 834.
"The entire statutory scheme of the [act] is directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act.... Just as a claimant may invoke the act's remedies only if the claimant satisfies the jurisdictional requirement of an employee as set forth in [General Statutes] § 31-275(9) ... only those defendants who satisfy the requisite jurisdictional standard of an employer as set forth in § 31-275(10) may successfully assert the exclusivity of the act as a bar to a common-law action by an alleged employee." (Citations omitted; internal quotation marks omitted.) Id., at 680, 748 A.2d 834. "In short, if the defendant was the plaintiff's employer, the plaintiff [is] relegated to the remedies afforded by the [act]." Velardi v. Ryder Truck Rental, Inc., 178 Conn. 371, 376, 423 A.2d 77 (1979).
We now turn to the specific question raised by the plaintiff's claim, that is, can she recover damages against the defendants for injuries arising out of her employment *275 or is she barred from doing so by the exclusivity provision of the act? Although this question presents an issue of first impression for this court, our answer is dictated by our prior precedent. We previously have held "that members of a local board of education are officers of the town they serve and that the persons employed by them in the performance of their statutory functions are employees of the town." Cheshire v. McKenney, 182 Conn. 253, 259-60, 438 A.2d 88 (1980); accord Wallingford v. Board of Education, supra, 152 Conn. at 573, 210 A.2d 446. In Mase v. Meriden, supra, 164 Conn. at 66-67, 316 A.2d 754, we relied on this principle in affirming the trial court's determination that the negligence action of the plaintiff, Rickey P. Mase, was barred by the exclusivity provision of the act. Mase, a nonprofessional employee of the Meriden board of education, had brought the action against the city of Meriden (city) to recover for injuries that he sustained when he slipped and fell in the course of his employment. Id., at 66, 316 A.2d 754. Following the accident, the board paid Mase workers' compensation benefits under a policy that it had purchased on behalf of its employees. See id. In reliance on this court's statement in Wallingford that employees of a board of education are employees of the town served by the board, the trial court in Mase granted the city's motion for summary judgment on the ground that Mase's claim was barred by the exclusivity of the act. See Mase v. Meriden, Superior Court, New Haven County at New Haven, Docket No. 12 2139 (March 7, 1972). In doing so, the trial court observed, contrary to Mase's contentions, that it was "of no moment" that the Meriden board of education "may have purchased [workers'] [c]ompensation coverage for persons hired by it.... The premium was obviously paid with [money] supplied by the [c]ity...." Id.
In a per curiam opinion, we upheld the trial court's determination, stating: "In Wallingford v. Board of Education, [supra, 152 Conn. at 573-74, 210 A.2d 446], we specifically held that although [local] boards of education are agencies of the state in charge of education in the towns, members of the board of education are, nevertheless, also officers of the town and that persons employed by the board in the performance of its statutory functions are employees of the town and are thus subject to the provisions of the town charter relating to civil service. Our holding in the Wallingford case that persons employed by the board of education are town employees was not limited only to situations [in which] there was a requirement that the board select its nonprofessional employees under those civil service requirements." Mase v. Meriden, supra, 164 Conn. at 67, 316 A.2d 754.
In the present case, the plaintiff contends that Mase does not control her claim because, among other reasons, the employment relationship that was found to exist in Mase was predicated on the city's right to require the Meriden board of education to comply with the civil service requirements of the city charter. See id. The plaintiff argues that, because she is not subject to the civil service requirements of any of the defendant towns, they lack the requisite control over her employment to satisfy the jurisdictional standard of an employer under Mase. We disagree.
No doubt because we viewed the employment relationship in Mase to be self-evident, we did not engage in a lengthy analysis of the issue, nor did we directly address Mase's arguments to the contrary. Notwithstanding the rather summary nature of our opinion in Mase, however, we explicitly stated that the holding in Wallingford, on which the trial court in Mase relied in concluding that Mase was a *276 city employee, "was not limited only to situations [in which] there was a requirement that the board select its nonprofessional employees [in accordance with the] civil service requirements [of the city]." (Emphasis added.) Id. Our review of the record in that case indicates that this statement was made in response to Mase's claim on appeal that the trial court's reliance on Wallingford was misplaced because Wallingford did not involve a claim for workers' compensation benefits but, rather, whether the Wallingford town charter authorized the town of Wallingford to control the manner in which its local board of education hired its nonprofessional staff.[11] See Mase v. Meriden, Conn. Supreme Court Records & Briefs, October Term, 1972, Pt. 1, Plaintiff's Brief pp. 4-6. Mase contended, therefore, that, when the court in Wallingford stated that a board of education employee is an employee of the town served by the board, it was not in the context of deciding whether an employment relationship existed under the act, and the court did not apply the right to control test in deciding the issue. See id., at p. 6. Mase further contended that, in applying the right to control test to the facts of his case, it was clear that he and the city were not in an employment relationship because the city did not exercise any control over the terms of his employment. See id., at p. 5. Specifically, Mase argued that the board, as an agent of the state, "employed [him], directed his activities, and had the power to fire him," whereas "[t]he [c]ity ... had no power to hire, fire, or direct him in his duties." Id.
By way of rebuttal, the city argued that the trial court correctly had concluded, in reliance on Wallingford, that the city exercised control over Mase through its officers on the board, which was sufficient *277 to satisfy the jurisdictional requirements of an employer under the act. Id., Defendant's Brief pp. 2-4. When read in context of the parties' arguments, therefore, it is apparent that our statement in Mase that the holding in Wallingford was not limited to cases in which a municipality has authority under its charter to prescribe the manner in which a board hires its nonprofessional staff was intended to indicate our agreement with the city that the requirements of the act were met in Mase not because the city possessed independent authority over Mase's employment but because the members of the board, as officers of the city, exercised their authority on behalf of the city. See, e.g., Cheshire v. McKenney, supra, 182 Conn. at 259, 438 A.2d 88 ("The members of local boards of education are invested with the powers of their office by municipal action. They are either elected by local constituencies ... or, pursuant to the town charter, are appointed by an elected officer or body of the municipality." [Citation omitted.]). We can perceive of no reason why the same reasoning should not apply to the present case. Just as local boards of education exercise their authority on behalf of the municipalities they serve, so, too, do the members of the district board exercise their authority on behalf of the defendant towns.
Indeed, it bears emphasis that the issue of whether an employee of a municipal board is also an employee of the municipality served by the board has arisen only in the context of boards of education. That the issue has arisen at all stems from the fact that "our jurisprudence has created a dichotomy in which local boards of education are agents of the state for some purposes and agents of the municipality for others." Purzycki v. Fairfield, 244 Conn. 101, 112, 708 A.2d 937 (1998); see also Board of Education v. New Haven, 237 Conn. 169, 181, 676 A.2d 375 (1996) ("A local board of education acts as an agent of the state when it performs those duties delegated to it by the state.... A board of education acts as an agent of its respective municipality when it performs those functions originally entrusted by the state to the municipality that the municipality has subsequently delegated to the board of education; e.g., the construction of schools or the acquisition of capital equipment. While acting as an agent of the municipality, the local boards of education must comply with the municipality's charter, ordinances and established fiscal procedures." [Citations omitted.]).
Thus, on those few occasions when we have considered the issue, it has been in connection with an efforteither by the employee of a board of education or by a board of education itselfto exploit this dichotomy to some advantage by claiming that board of education employees are employees of the board alone rather than the municipality served by the board. See, e.g., Board of Education v. State Employees Retirement Commission, 210 Conn. 531, 543-45, 556 A.2d 572 (1989) (determining whether board of education employees were employees of municipality such that their wages were subject to social security taxation); Cheshire v. McKenney, supra, 182 Conn. at 257-61, 438 A.2d 88 (determining whether board of education employee was employee of municipality and therefore subject to local charter provision prohibiting municipal employees from serving as members of town council); Mase v. Meriden, supra, 164 Conn. at 66-67, 316 A.2d 754 (determining whether board of education employee was employee of municipality for purposes of applying exclusivity provision of act). We rejected this claim in each of the foregoing cases, concluding that the board's dual agency in no way undercut the employer-employee relationship between the municipality and *278 the board's employees. See Board of Education v. State Employees Retirement Commission, supra, at 545, 556 A.2d 572; Cheshire v. McKenney, supra, at 261, 438 A.2d 88; Mase v. Meriden, supra, at 67, 316 A.2d 754.
There is, of course, no similar dichotomy in the present case. When the district board carries out its duties pursuant to the provisions of § 7-330 and the municipal animal control district agreement, it does so solely on behalf of the defendant towns, pursuant to the authority delegated to it by those towns. See General Statutes § 7-331 (district board "shall have all the powers and duties with regard to [district] projects as such constituent municipalities would have severally"). Accordingly, to the extent that the plaintiff contends that Mase is inapplicable to the present case because of the unique nature of boards of education relative to the straightforward nature of other municipal boards, that contention is without merit. Whatever differences exist between them clearly militate in favor of our conclusion that the defendants and the plaintiff were in an employment relationship.[12]
We also are not persuaded by the plaintiff's contention that the structure of the district animal control "reflects policy choices that ... are inconsistent with a finding that the towns were [the] plaintiff's employer." Specifically, the plaintiff contends that, by organizing the district animal control so that its employees were employees of the district animal control rather than of each of the individual towns, the defendants "insulated themselves from a series of burdens that they quite reasonably thought it [was] very useful to avoid. These burdens include [financial] obligations both to [the] plaintiff and for [the] plaintiff's conduct that might potentially injure others." The plaintiff does not explain, however, and we are unable to discern, how the defendants have insulated themselves from any of the burdens that she describes in light of the fact that, under both the municipal animal control district agreement and § 7-331, the defendants are wholly liable for all of the expenses of the district animal control, including the expenses relating to the plaintiff's employment.[13] We also find *279 no merit in the plaintiff's contention that, because district animal control employees are not employees of each of the towns individually and, therefore, are not entitled to participate in the pension plans of any of the individual towns or to receive the same benefits as persons employed by the towns, she and the defendants were not in an employer-employee relationship. The fact that the plaintiff's employment was structured so that she served as an employee of the district animal control rather than of any one of the individual towns simply reflects the practical realities of establishing and administering such a regional district. The manner in which the employment arrangement is structured pales in significance to the fact that the defendant towns control the district board and the budget, the fact that they are liable for all expenses and debts incurred by the district animal control, and the fact that they created the district animal control, as expressly authorized by § 7-330, solely for the purpose of avoiding duplication of animal control services in the discharge of their statutory duty to provide such services.
Finally, it is axiomatic that municipal boards and agencies are extensions of the towns they serve, created for the purpose of performing those functions that towns are statutorily required or permitted to perform. See, e.g., General Statutes § 7-193(b) ("[e]ach municipality may have any municipal officers, departments, boards, commissions and agencies which are specifically allowed by the general statutes or which are necessary to carry out any municipal powers, duties or responsibilities under the general statutes"). They are, in effect, alter egos of the towns. The district animal control is no different. Indeed, the only thing that distinguishes it from a single-municipality agency or board, tasked with performing the same quintessentially municipal function, is that the district animal control serves more than one town. That its structure or organization may differ on account of this fact does not alter its fundamental character as an agent of the defendant towns.[14] Nor does it alter the fundamental nature of the relationship between the defendant towns and district animal control employees as that of employer and employee.
To conclude otherwise, as the trial court aptly explained, "would subject a town [that] participates in a municipal district to liability for a worker's on-the-job injury claim twice, once through assessment for sums to provide workers' compensation coverage through the district and then directly for the injury itself. [This] cannot be the intent of the legislature in providing for the regionalization of municipal services. The obvious purpose of the statutes *280 ... allowing the regionalization of services by towns, which, because of their size, would make the individual provision of such service by one town alone economically unfeasible, would be defeated if such regionalization would operate to strip the town of the protections it would have had if it provided the service alone."
For the foregoing reasons, we agree with the trial court that the defendants are the plaintiff's employer for purposes of the act, and, therefore, the plaintiff's claims are barred by the exclusivity provisions of the act. Accordingly, the trial court properly granted the defendants' motions for summary judgment, and we reject the plaintiff's claim in Docket No. SC 18422. Because the claim in Docket No. SC 18312 is controlled by our resolution of the appeal in Docket No. SC 18422; see footnote 8 of this opinion; we reject the claim in Docket No. SC 18312 as well.
The judgment is affirmed.
In this opinion the other justices concurred.
NOTES
[1] The consolidated appeals that are the subject of this opinion are Docket No. SC 18422, which was filed by the named plaintiff, Judith Rettig, and Docket No. SC 18312, which was filed by the plaintiff Christine Santoro. As we explain more fully hereinafter; see footnote 8 of this opinion; our resolution of the appeal in Docket No. SC 18422 is dispositive of the appeal in Docket No. SC 18312. Unless otherwise indicated, all references in this opinion are to the appeal in Docket No. SC 18422.
[2] General Statutes § 7-330 provides: "Any two or more towns, cities or boroughs may, by vote of their legislative bodies, vote to form a district for the performance of any municipal function which the constituent municipalities of such district may, under any provision of the general statutes or of any special act, perform separately. The affairs of any such district shall be managed by a board consisting of two members from each constituent municipality appointed by the board of selectmen of towns, the council or board of aldermen of cities and the board of burgesses of boroughs. Any town, city or borough having a population of more than five thousand inhabitants as determined by the last-completed federal census shall be entitled to one additional representative for each additional five thousand population or part thereof. The board shall, at its first meeting, determine by lot which members shall serve for one, two or three years, provided the terms of office of not more than fifty per cent of the board shall expire in any one year. Thereafter, the terms of office shall be for three years. Such board shall choose by ballot from its membership a chairman, a secretary and a treasurer. Such treasurer shall give bond to the board to the satisfaction of its members, the cost of such bond to be borne by the board."
[3] General Statutes § 31-284(a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."
[4] Christine Santoro also is a plaintiff. In addition, the district animal control intervened as a plaintiff. In the interest of simplicity, we refer to Rettig, the named plaintiff, as the plaintiff throughout this opinion.
[5] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1.
[6] The complaint also named as defendants Advanced Paving and Excavating, Inc., as well as the following officers of the defendant towns: Warren Connors; Robert Chatfield; Edwin Lieberman; Clifford Rosson; Amey Marrella; Judith Schwartz; Joseph Calistro; Christian Sorenson; James Sabshin; Edward Sheehy; Steven Bortner; Mitchell Goldblatt; James Zeoli; Joseph Blake; Richard Meisenheimer; Dorothy Berger; Ralph Okenquist; Patricia Pearson; Roy Cuzzocreo; Derrylyn Gorski; Steven Thornquist; and Walter Briggs. Prior to judgment, the plaintiff withdrew her claims against Advanced Paving and Excavating, Inc. All of the original defendants except Advanced Paving and Excavating, Inc., are parties to this appeal. In the interest of simplicity, all references to the defendants in this opinion are to the defendant towns.
[7] General Statutes § 52-557n provides in relevant part: "(a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by ... (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."
[8] Because we reject the plaintiff's claim in the appeal corresponding to Docket No. SC 18422, and because the claim in the appeal corresponding to Docket No. SC 18312 is derivative of the claim in Docket No. SC 18422, the claim in Docket No. SC 18312 also must fail. Christine Santoro, who filed the appeal in Docket No. SC 18312, was joined in a civil union with the plaintiff on April 9, 2006, and asserted a claim for loss of consortium against the defendants in the plaintiff's action. The trial court granted the defendants' motions to strike Santoro's claim on the ground that Santoro and the plaintiff had not been joined in a civil union when the plaintiff sustained her injuries. Santoro appealed but acknowledged that her loss of consortium claim is derivative of the plaintiff's claims and, therefore, that she cannot prevail on appeal if we conclude that the trial court correctly determined that the plaintiff's claims are barred by the exclusivity provision of the act. Because we reject the plaintiff's claim in Docket No. SC 18422, we reject Santoro's claim in Docket No. SC 18312. Therefore, we affirm the trial court's judgment.
[9] General Statutes (Rev. to 1987) § 22-331a (a) provides in relevant part: "Any two or more contiguous towns each of which has a population of less than twenty-five thousand, and which have or will provide a dog pound facility within their region, by action of their legislative bodies, may agree to be served by a regional canine control officer. Upon certification of such agreement to the commissioner with assurances from the towns so certifying that they will provide and continue to provide adequate facilities, the commissioner may, after giving due regard to the regional aspects of the proposed facilities and whether the proposed region would be in the best interests of the towns so certifying, establish such region. Upon establishing such region, the commissioner shall appoint a full-time regional canine control officer and such assistants as are deemed necessary to administer and enforce the laws relating to dogs.... All costs of maintaining and operating such pounds and administering and enforcing the laws relating to dogs within such regions shall be paid in accordance with the provisions of subsection (b)."
[10] We note, preliminarily, that our review of the plaintiff's claims is guided by the well established principles governing motions for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.... The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law.... On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court.... Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) Southwick at Milford Condominium Assn., Inc. v. 523 Wheelers Farm Road, Milford, LLC, 294 Conn. 311, 318, 984 A.2d 676 (2009).
[11] In Wallingford, the town of Wallingford (town) brought a declaratory judgment action against the Wallingford board of education, seeking a determination of whether the town, pursuant to its authority under the Home Rule Act, could require the board to comply with the town's civil service requirements in the hiring of its nonprofessional staff. Wallingford v. Board of Education, supra, 152 Conn. at 570, 210 A.2d 446. In opposing the town's action, the board argued that the statutory powers delegated to it by the state to implement the state's educational policies necessarily entailed the power to employ, on whatever terms it deemed fit, the personnel necessary to carry out its duties. Id., at 573, 210 A.2d 446. We framed the issue presented as "whether the implied power, which the [board of education] concededly possess[es], to employ the personnel necessary to carry out [its] obligations as [an agent] of the state is improperly invaded by a requirement that [it] observe the civil service requirements of the [local] charter in the employment of [its] nonprofessional personnel." Id., at 574, 210 A.2d 446.

In resolving that issue, we set forth several undisputed principles, including that (1) a local board of education is an agency of the state, (2) members of a board of education are officers of the town served by the board, (3) the persons that the board employs are employees of the town, and (4) "local charter powers must yield to the superior power of the state when the two enter a field of statewide concern." Id., at 572-74, 210 A.2d 446. Applying these principles, we concluded that "[t]he institution of civil service for town employees is a matter of local concern to the town...." Id., at 574, 210 A.2d 446. We further concluded that "[t]here [was] nothing in the [statutory] powers to be implied . . . [that] would deny to [the town] the power to embrace, within its civil service system, the nonprofessional employees of the board of education.... The ability to perform the statutory duties imposed on the board are not destroyed or interfered with in any unreasonable way by a requirement that the selection of nonprofessional employees be made from a classified list of persons whose qualifications have been determined on a uniform basis applicable to other town employees similarly situated and whose rights and responsibilities thereafter are fixed by regulations designed to serve the mutual benefit of the employee and the community." Id., at 574-75, 210 A.2d 446.
[12] We therefore reject the plaintiff's contention that the trial court improperly extrapolated from Mase that an employee of a regional board of education would be treated as an employee of the municipalities participating in the regional school district for purposes of applying the exclusivity provision of the act. Apart from identifying several largely irrelevant differences between regional and single-municipality school districts, the plaintiff does not offer a single reason why regional school board employees should be treated differently except that they are not subject to the civil service rules of the individual municipalities comprising the district. As we previously have explained, however, we concluded in Mase that whether the employees of a single-municipality school district were subject to the civil service rules of the municipality was irrelevant to our determination that the employees and the municipality were in an employment relationship. See Mase v. Meriden, supra, 164 Conn. at 67, 316 A.2d 754. Our reasoning in Mase is equally applicable to regional school board employees.
[13] Indeed, as the defendants note, in contrast to other intermunicipal agencies, there is nothing in our statutes to suggest that the district animal control has an independent legal existence apart from the defendants or that it otherwise may sue or be sued in its own capacity. Cf. General Statutes § 7-130d (intermunicipal authority established pursuant to General Statutes § 7-130b "is authorized and empowered: [a] [t]o have existence for such term of years as is specified by the participating municipalities; [b] to contract and be contracted with; to sue and be sued; to make and, from time to time, amend and repeal bylaws, rules and regulations not inconsistent with general law to carry out its purposes"); General Statutes § 7-233e (b) ("[a] municipal electric energy cooperative created in the manner provided in this chapter ... shall have the ... [power] ... [2] [t]o sue and be sued"); General Statutes § 7-479d ("[a]n interlocal risk management agency may sue or be sued and shall appoint a natural person residing in this state or a corporation authorized to do business in this state as its agent for service of process and notify the insurance commissioner of such appointment"). But even if it could, the plaintiff does not dispute that the defendants would be wholly liable for any judgment against it.
[14] The plaintiff asserts that the district animal control is more analogous to a corporate subsidiary or joint venture than to a municipal board or agency, and that we should treat the district animal control as such an entity for purposes of determining whether it is the plaintiff's employer under the act. Beyond her assertion, however, the plaintiff fails to explain why the district animal control is similar to a corporate board or joint venture. In any event, to the extent that any parallels may be drawn between those entities and the district animal control, we are fully persuaded that the district animal control is far more comparable to a municipal board or agency.